LORENZO FIRMAN v. JAMES BLOOD, ABRAHAM WILDER AND ROBERT MORROW.

### Error from Douglas County.

Under Sec. 277 Civil Code, if a party as a matter of right desires the Court to pass upon any proposition of law pertinent to the case, he must prefer his request before argument, or he waives his privilege. *Semble*, a refusal on such ground to pass upon propositions preferred after argument, would not be error.

Firman v. Blood and others.

But when the Court passes upon propositions preferred after argumenst, it is bound to give the law correctly.

Where the petition contains the usual avorments on a noto, setting forth that the payee and a subsequent endorsee, were agents of the plaintiff, and the money loaned thereon the plaintiff's, and the answer denies and avers no knowledge of the agency of payee by the maker, but that he dealt with payee as principal, setting up an offset of moneys and goods paid to payee on the note, and where the record shows that parties, plaintiff and defendants, offered evidence tending to prove their respective allegations, *held* that the evidence is sufficiently full to "explain the exceptions" to a charge of the Court to the jury relating to the alleged set-off; *held further* that a charge that if the maker knew that the payee loaned the money as agent, then no debt against him can be set off against the note, and if the maker stood by and saw the note endorsed for value to an innocent party without having his offset endorsed or setting up his claim, or if he relinquished it as an off-set, then he is estopped from setting it up as against an innocent holder, but if the note was assigned before the maker had opportunity to set up his claim, then his silence would not create an estoppel; and if the money was borrowed from payee under the belief that he was principal and not agent and so dealt with him up to the time of the transfer, then the maker may set up as payments any sum received by the payee on account of said note up to the time of the transfer, unless he was estopped, was a proper application of the law to the case as it is presented by the record.

In such case where the petition sets out a note made by defendant "B" payable to the order of the payee and bears the endorsement in blank on its back, of defendants M. and W., and the petition avers that these defendants, M. and W. wrote their names on the note "at the time and place of its execution," claiming judgment against the three as joint makers, and where the answer avers that M. and W. endorsed after value received by the maker and delivery of the note to payee, and without consideration, a charge to the jury that "from the fact of the signing upon the back of the note, M. and W. simply assumed the character of endorsers and are not liable without protest and notice, that this character of endorser cannot be changed except by agreement at the time of signing, on which further or other liability is assumed," *held* erroneous.

Strangers to the consideration of a note, by endorsing in blank at the time of its execution, by the delivery of the note to the payee, authorize him to write over their signatures, whatever is consistent with the understanding of the parties; whatever obligation the endorsers incurred at the time of the delivery was to the payee; as between these parties the note was complete on delivery. For the payee to write over their names a simple commercial endorsement, is to make the paper meaningless in the hands of the payee.

63

"Such a construction should be placed upon the contract as will prevent its failure, and will give effect to the obligation of each party appearing on it at the moment the contract itself takes effect,""is a rule of law applicable to the case.

In such case *held* that in the absence of proof of any other or further liability assumed by the endorsers than that shown by the note, they must be held as guarrantors. No subsequent transfer of the note would change the nature of their obligation.

This was an action instituted by Firman, plaintiff below, on a promissory note, of which the following is a copy:

"$500.00.   Three months after date, I promise to pay to the order of Charles H. Branscomb, five hundred dollars, with interest at the rate of three per cent. per month, until paid,—value received.

"Lawrence, July 1, 1858.            JAMES BLOOD."

Which note was endorsed as follows:

"ABRAHAM WILDER,

"ROBERT MORROW."

"Pay to J.·S. Balentine or bearer, without recourse to me.                          CHAS. H. BRANSCOMB."

"Pay to Lorenzo Firman.       J. S. BALENTINE."

The amended petition of the plaintiff, filed May 21st, 1860, after setting forth the note in the usual form, proceeded to allege that the defendants, Morrow and Wilder, at the time and place of the execution of the note, wrote their names upon the back of the note in blank; that Branscomb, the payee in the note, was the duly authorized agent of the plaintiff; that the money for which the note was given belonged to the plaintiff, who alone was beneficially interested therein; that Branscomb transferred the note by endorsement, to one James S. Balentine, who also was an agent of the plaintiff, and that Balentine transferred the note to the plaintiff.

The amended answer of defendants, filed May 5th, 1862, alleged that Morrow and Wilder endorsed their names upon the note in controversy, after the money had been received by Blood, and after the note had·been delivered to Brans-

comb, and without any consideration whatever passing to Morrow and Wilder from any person whomsoever, that Blood, when he received the money from Branscomb, for which the note was given, had no knowledge whatever of Branscomb's agency, and acted throughout under the belief that he was dealing with Branscomb as a principal, and was receiving the money from him; that said Morrow and Wilder had no notice whatever, at any time, that Branscomb was acting as agent; that on the 7th day of August, Blood paid Branscomb $175, and received his due-bill, therefor, under a special agreement, then made with Branscomb, that the money so paid by Blood and received by Branscomb, was to be applied as a payment upon said note; that on the 1st of Sept., A. D. 1858, said Branscomb was further indebted to Blood in the sum of $101.17, for which said Branscomb gave his due-bill, for certain goods and merchandize before that time sold and delivered by Blood to Branscomb, and also several small sums of money paid to Branscomb by Blood; that it was agreed and understood between Blood and Branscomb when such goods and merchandise and small sums of mony were received by Branscomb, that they were to be applied to the payment of the note, in plaintiff's petition described; that neither of these defendants had any notice, for a long time after, of Branscomb's agency; that Blood acted throughout under the belief that Branscomb was dealing for himself and with his own funds; that on the 29th of October, 1859, Blood offered to confess judgment for the amount admitted to be due in his original answer, which was the amount of the note less the sums above mentioned as having been paid to Branscomb.

The record shows that the party plaintiff offered evidence tending to prove his case and rested, and the said defendants then offered evidence tending to prove their defense and rested, and the arguments of the cause having been heard, as well for the said plaintiff as the said defend-

ants, the Court proceeded to charge the jury upon the law of the case, whereupon the counsel for the said plaintiff asked the Court to instruct the jury as follows:

1st.　That if the jury believe that Morrow and Wilder endorsed the note in controversy at or before the time it was delivered to Branscomb, or in pursuance of an arrangement made by Blood and Branscomb when the money was loaned, then in either case Morrow and Wilder are liable with Blood as joint makers.

2d.　That if the jury believe that Morrow and Wilder endorsed the note in controversy at or before the time it was delivered to Branscomb, and that the money was advanced by Branscomb on the joint credit of the defendants, then all the defendants are liable as joint makers.

3d.　If the jury believe that at or before the time Balentine took the note from Branscomb, Blood promised Balentine to pay the note, or acknowledged to him in his hearing that the debt was a valid debt; or if the jury should believe that Blood stood by and silently saw the note assigned to Balentine, or knew of its being so assigned and failed to notify the assignee of his claim, he is estopped from setting up any claim he may have against Branscomb.

4th.　That Blood cannot set off an individual demand against Branscomb.

5th.　That if the jury belive that Morrow and Wilder endorsed the note in controversy at the time of its execution by Blood, or in pursuance of an intention to become responsible from the time of the making of the note, then they are liable as joint makers.

6th.　That the intention of Morrow and Wilder to become liable at the making of the note may be proved by parole evidence, and the rule is the same whether the instrument is negotiable or not.

7th.　If the jury believe that Morrow and Wilder were privy to the consideration of the note, they may be charged directly as makers or endorsers.

All of the above instructions were refused by the Court, and the ruling of the Court thereon is assigned for error.

The Court charged the jury, on the part of the defendants, substantially:

1st. That Morrow and Wilder were liable upon the note in controversy, if at all, simply as commercial endorsers; and that they cannot be charged with payment, unless the note had been protested, and notice of the non-payment given to them, according to law. This character of endorser cannot be changed, except by agreement at the time of signing, on which further or other liability is assumed.

2d. If the jury believe that the note in controversy was assigned to Balentine, before Blood saw Balentine, then Blood's not mentioning the set-off in payment in conversing with Balentine, does not create an estoppel.

3d. That if Blood acted, in all his transactions with Branscomb, down to the assignment to Balentine, under the belief that Branscomb was principal and not agent, then the defendants may set off any sum or sums received by Branscomb on account of said note, up to the time of the assignment to Balentine, unless he shall be deemed to be estopped.

4th. That the jury may find for one or more of the defendants, or against one or more of them, according to the justice of the case.

The granting of these instructions is assigned for error.

This case was argued by *Wilson Shannon* and *Asahel Buck*, for plaintiff in error, and by *Louis Carpenter*, for defendants in error.

*Shannon* and *Buck*, for plaintiff in error, filed separate briefs, covering substantially the following points:

1st. It is the uniform practice in this State for counsel to ask the Court to instruct the jury on the law of the case after the arguments are closed, and there is nothing in the Code which makes this practice illegal. At common law

the Court was not bound in a jury case to give any instructions to the jury on the law of the case until the arguments of counsel on both sides was closed. The Court would then submit the case to the jury with such instructions as they thought pertinent; counsel on either side had no right to call on the Court to decide any question of law touching the merits of the case until then. The provision in the Code was intended to change the common law practice so far as to give to either party the right to call on the Court to determine before argument any legal question that might be involved in the case. In many cases it may be important for counsel to have the law of the case settled before proceeding to argue to the jury; and the Code gives the right to either party to have this done by the Court, if thought desirable, and the Court, under the Code, cannot refuse as it might have done under the common law practice. But this provision was intended to enlarge the rights of the parties, but if neither party insist on this right, then the practice under the Code remains the same as at common law, and if the Court refuse to give instructions which ought to be given on either side, it is error. It is no more discretionary in the Court to give or refuse instructions asked for after the arguments of counsel, than it was at common law. But in this case the Court did instruct the jury after the arguments of counsel on both sides, giving and refusing some of the instructions asked for on both sides.

If the Court undertake to exercise discretionary power on the request of parties, they are bound to exercise it correctly, and for one party as well as the other.

2d. In all jury cases the bill of exceptions never does and cannot show what was proved or what evidence was given to the jury. It is for the jury alone to say what the evidence was. The Court cannot in a case submitted to a jury, say even what was said by the witnesses on the stand, because it is the recollection of the jury, and not the recol-

lection of the Court that determines what was proved, as well as the language of the witnesses.  Where the case is tried to the Court, both on the facts and law, it is sufficient · in such a case, on motion for new trial being overruled, and exceptions taken to the ruling of the Court, that the Court require the facts proved or so many of them as may be necessary to show the legal points raised, to be set out in the bill of exceptions.  Not so in a jury case; all that is required in such a case is just what was done in this; that the plaintiff introduced evidence tending to prove the issues on his part, and the defendants introduced evidence tending to prove the issues on their part, &c..  One of the issues that the plaintiff had to prove, was that all the defendants were joint original undertakers or makers of the note in question.  The bill of exceptions shows that we offered evidence tending to prove this issue : the plaintiff had a right to ask the Court to instruct the jury what in law would constitute a joint and original making of a note.

Having introduced evidence tending to prove the issues on our part—that is, that the defendants were all joint original promisors or makers, we had a right to have the Court state to the jury all the circumstances and facts under which the law would consider the defendants joint and original promisors or makers.  The object of the instructions on this point, asked for by the plaintiff, was for this purpose, and not merely to elicit the opinion of the Court on an abstract legal proposition.

3d.  The instructions asked for by plaintiff claim the law to be that if Morrow and Wilder put their names in blank on the note at the time, or before the delivery of the note to Branscomb, and the money was advanced by Branscomb to Blood on the joint credit of all the defendants, then the defendants can be charged as joint makers of the note.

The 5th instruction asked for by the plaintiff, modifies this proposition to some extent, and lays down the law

truly, as I believe, but this and all the other instructions on this point asked for by the plaintiff, were refused by the Court, and the instructions asked for by the defendants on this point given. That is from the fact of Wilder and Morrow signing their names upon the back of the note, they simply assumed the character of endorsers of the note, and cannot be charged with payment of the same unless the note was duly protested and notice thereof given to them. To maintain the position that Morrow and Wilder may be charged as original makers of the note, I will refer the Court to the following authorities. 9 *Ohio*, 131; 13 *id*. 228; 17 *id*. 36-42; *Story on Notes*, 476; 3 *Scam. R.*, 437; 9 *Texas*, 215; 14 *id*. 275; 6 *id*. 278; 18 *Mo.*, 74-140; 2 *Mich.* 555; (*Gill*) *Adams* v. *Hardly*, 32 *Maine*, (2 *Red.*) 339; *Sullivan* v. *Violet*, 6 *Gill*, 181; 13 *Ill.*, 682; 9 *Pa.*, 345; 2 *McMillins*, 313; 12 *Vt.*, 218-19; 16 *id*. 554; 11 *N. H.*, 385; *Flint* v. *Day*, 9 *Vt.*, 375; *Mellon* v. *Leuthard*, 36 *Me.*, (1 *Heath*,) 147; 13 *R. I.*, 175; 4 *Pick.*, (*Mass.*) 385-7; 3 *Mass.*, 274; 5 *id*. 358-546; 7 *id*. 58; 9 *id*. 315; 11 *id*. 440; 14 *id*. 316; 8 *Pick.*, 122; 9 *Cush.*, 104; 19 *Pick.*, 260; 24 *id*. 64; 3 *Met.*, 275; 7 *Foster*, (*N. H.*) 366; *Schanerder* v. *Shippman*, 2 *Miss.*, (5 *Bennett*) 571; *Swan's Treaties*, 393; 13 *John*, 175; 14 *id*. 349.

It will be found that the above authorities abundantly sustain the following propositions:

1st. The mere endorsement upon a note of a strangers name in blank, is *prima facie* evidence of a guarantee. But if made at the time of the execution by the other party or in pursuance of an intention to become responsible, it is an original undertaking, and such persons will be held as makers of the note, and such intentions may be proved by parole, or if they were privy to the consideration, they may be charged as makers.

In the case of Dean *v.* Hale, 17 Wend. R., 214, it was held that where an endorser of a promissory note, payable to bearer, was privy to the consideration, he may be charg-

ed directly as maker or as endorser, and that a *bonafide* holder of such a note endorsed in blank may fill up the endorsement in any form consistent with the intention of the parties. On this point there would seem to be no conflict. Morrow and Wilder are not payees of the note, and how can they be held as endorsers? They had no interest in the note that they could assign, and they must be held liable either as guarantors of the note, or as makers, or no effect is given to their signature. But the Court instructed the jury that they are to be held and considered as endorsers, and entitled to notice of demand and non-payment. They cannot be held liable while the note remains in the hands of the payee. The authorities that sustain the position that they can only be held liable as makers or guarantors, give effect to the contract that is created by [such blank endorsement according to the interest of the parties. If the endorsement in blank was made at the time of the execution of the note or afterwards in pursuance to an agreement, to be liable from the first, or while the party endorsing in blank is privy to the consideration of the note, then such endorser may be held as maker and security for the principal. But when the endorsement is after the execution of the note and has no connection with its origin or the consideration, then such an endorser can only be held as a guarantor.

In New York the rule recognized by the Court in this case, is held to be the law now, where the note is a negotiable note, but where the note is not negotiable, the rule in New York and all the States, is the same. There is no conflict of authority except where the note is negotiable. These notes set up in the answer cannot be set up as payment on the note set out in the petition. They are notes by which Branscomb promised to pay Blood two certain sums of money. They can only be pleaded as set-off, not as payment, and they are so pleaded. It is admitted that neither Branscomb nor Balentine ever had any interest in

64

fact in the note set out in the petition. That Firman is, and always was in fact the true owner. The money is and always has been coming to Firman from the defendants. The note of plaintiff and the contract on which the plaintiff seeks to recover, is dated July 1st, 1858. At common law there is no such thing known as set-off. It is purely statutory both in England and this country. Now the statute in force at the time this contract was made, July 1st, 1858, is the statute of 1855. (*See p.* 708, *Act of* 1855.) The first section of this act provides that if any two or more persons are mutually indebted in any manner whatsoever, and one of them commences an action against the other—one debt may be set off against the other, although such debts are of a different nature. Now under this statute the debts to be set off must be mutual; in other words there must be a mutual indebtedness. There is not and never was any indebtedness on the part of Firman to Blood or any of the defendants. The pleadings then show that Blood, one of the defendants, seeks to set off a debt which he has against Branscomb, who never had any right, title or interest in the note on which the plaintiff has sued.

In the 13th section of the Act of 1855, above referred to, it is only a debt or demand due from the plaintiff that can be set off. In this case it is not claimed that there is any debt or demand due from the plaintiff to Blood.

*Louis Carpenter*, for defendants in error, submitted:

I. By the bill of exceptions it appears that the plaintiff asked the Court to grant his instructions to the jury *after* the evidence of both parties had been concluded, and after the counsel had argued [the case to the jury. The 277th section of the Code of Civil Procedure directs the order of the trial. By the 5th subdivision of that section, it is enacted that "when the evidence is concluded, either party may request instructions to the jury, which shall be given or refused by the Court."

The 6th subdivision provides for the submission or argument of the case; and it is provided in the 7th subdivision that the Court may again charge the jury after the argument is concluded.

The defendants in error insist that the Court was under no obligation to entertain the request to charge the jury after the argument of counsel had been heard; that this request exists, as a *right*, only when made after the conclusion of the evidence, and before the case is submitted or argued to the jury; that to grant or refuse a request to charge the jury, made after the case has been submitted or argued to the jury, is a matter of pure discretion in the Court. The different parts of this section must be construed together, and such a construction adopted as will make all parts of the statute sensible and significant. The first clause of the section provides that "the trial *shall* proceed in the following order, unless the Court, for *special reasons*, otherwise direct." Fifth subdivision : "When the evidence is concluded, either party may request instructions to the jury, on points of law, which shall be given or refused by the Court." Here the language is imperative. The duty of the Court is plain. The direction of the statute is explicit. The language of the 7th subdivision is that "the Court may again charge the jury after the argument is concluded." This language implies discretionary power only. The object of this subdivision is undoubtedly to give the Court, unembarrassed by the contentions of counsel, an opportunity, calmly and dispassionately, to submit the case to the jury, under such charges and reflections as may seem judicious. If a party has a *right* to request the Court to charge the jury after the conclusion of the argument, then the 5th and 7th subdivisions of the section mean the same thing, and one of them is therefore insensible and without significance.

Error does not lie upon what is matter of discretion in the Court. *Nash's Plea. and Prac.*, 688; *Seney's Code*

397—*gg*; *Legg* v. *Drake*, 1 *Ohio S.*, 286; *Marine Ins. Co.* v. *Hodgson*, 6 *Cranch*, 217-218; *Welch* v. *Mandeville*, 7 *id.* 152; *Sims* v. *Hundley*, 6 *How.*, 6; *Turner* v. *Gates*, 16 *id.* 25. *See also* 2 *Cowan & Hill's notes to Phillip's Ev.* note 412; *Law* v. *Merrills*, 6 *Wend.*, 278.

Some of these cases decide that, in the absence of statutory provisions, the ruling of the Court refusing a new trial is not the subject of error; that this being at common law a matter within the discretion of the Court, will not be reviewed by the Appellate Court. And this certainty is as strong a case as the one at bar, and even stronger; for in many States, and among others in Kansas, the Legislature has interposed and made an order granting or refusing a new trial reviewable on error.

II. The defendants in error insist that the bill of exceptions does not contain "so much of the evidence as is necessary to explain the exception." *Sec.* 302, *Code of Civil Procedure.*

The rule has always been that Courts cannot be required to instruct the jury on abstract points of law, or to declare the law in hypothetical cases. *Brooks* v. *Maberry*, 11 *Wheat.*, 99; *Hamilton* v. *Russell*, 1 *Cranch*, 318; *Greathouse* v. *Brown*, 5 *Mon.*, 280-282.

Enough evidence must be given in the bill of exceptions to show the instructions to have been material. *Vasse* v. *Smith*, 6 *Cranch*, 232-233—*note*; *Loudenback* v. *Collins*, 4 *Ohio Stat.*, 251; *Satchell* v. *Doram*, 4 *id.* 543; *Law* v. *Merrills*, 6 *Wend.*, 274-275; *Rhett* v. *Poe*, 2 *How.*, 483.

The only reference to the evidence in the bill of exceptions is that, on the trial of this cause, " the plaintiff offered evidence tending to prove his case and rested, and the said defendants then offered evidence tending to prove their defense and rested." How much or what testimony was offered, by which side offered, or of its relevancy, competency and materiality, the bill of exceptions utterly fails to inform us. For aught that appears in the bill, the whole

of the testimony offered may have been rejected by the Court. Every presumption is in favor of the judgment of the Court below; and the errors complained of must appear affirmatively from the record. *Little Miami R. R.*, v. *Collet, et al.*, 6 *Ohio St.*, 182; *Scovern* v. *State*, 6 *id.* 288.

But we insist it does not affirmatively appear, from the record, that any of the instructions embraced within the first assignment of error, had any application whatever to the evidence of the case.

And we will here establish another proposition : That if a prayer for instructions is not correct in the very terms in which it is drawn up, it is not error to refuse it. *Brooks* v. *Maberry*, 11 *Wheat.*, 94; *Catts* v. *Phalen*, 2 *How.*, 382; *Walker* v. *Lessee of Devlin*, 2 *Ohio St.*, 593; *Senney*, 398, *xx*.

Let us examine these instructions by the tests above laid down.

The first instruction embraces two distinct propositions of law. 1st. The execution of the note by Morrow and Wilder at or before the delivery, and 2d. Its execution in pursuance of an arrangement made by Blood and Branscomb when the money was loaned. Now, if either of these propositions is incorrect, or if there was no evidence given upon any one of them, it would follow that the Court would be required to refuse the instruction as a whole, and committed no error in so doing.

It may be insisted, by the plaintiff in error, that the general statement, made in the bill of exceptions, to the effect that each party offered evidence tending to prove his side of the case, is a sufficient statement of the evidence as to all facts that appear to be alleged in the pleadings, because it may be inferred or presumed that each party proved or attempted to prove all the material allegations on his own side. We do not see the matter in that light, as we have before explained; but let us admit this view to be correct, for the argument. Now we say, emphatically, that the record

discloses nothing, either in the pleadings or bill of exceptions, from which it would appear that any evidence whatever was given upon the second proposition of law containtained in the first instruction; that as far as appears from the record before this Court, the second proposition of law had no application whatever to the case before the Court,— was an abstract proposition, which the Court properly refused; and the instruction being bad in part, is bad *in toto*.

The second instruction is open to the same objection as the first; the second clause of the instruction containing a hypothetical case, that the money was advanced by Branscomb, on the joint credit of all the defendants, of which the record does not disclose the least intimation.

The same objection is applicable to the whole of the third instruction, which is purely hypothetical. There is not a single word in the record of any evidence having been given, relating to the subject of this instruction.

We consider the statement of the evidence insufficient to support the fourth instruction.

We repeat, with respect to the fifth instruction, that the second proposition of law, that Morrow and Wilder endorsed the note in pursuance of an intention to become responsible, &c., is entirely unsupported by any evidence whatever; and the same is equally true of the whole of the sixth and seventh instructions.

If the Court should overrule our objections to the instructions of the plaintiff, it will become necessary to examine them upon the merits.

What then is the liability of Morrow and Wilder? In Story on Promissory Notes, Sec. 479, it is laid down, in substance, that whatever diversities of interpretation may be found in the authorities as to the effect of a blank endorsement by a third party, of a negotiable promissory note, "there is one principle admitted by them all, and that is that the interpretation ought to be just such as carries

into effect the true intention of the parties, which may be made out by parole proof of the facts and circumstances which took place at the time of the transaction."

There is nothing in the bill of exceptions which would show that any parole proof was offered to explain the intention of Morrow and Wilder in endorsing the note. It is true the petition alleges that Morrow and Wilder " did then and there write their respective names upon the back of said note in blank, and became parties to the said note, and became liable, and undertook and promised to pay, &c. But the only fact here alleged is that Morrow and Wilder wrote their names upon the back of the note in blank; the other statement—that they became parties to the note, &c. —is the statement of a conclusion of law. As we have before observed, the bill of exceptions does not show what evidence, or whether any evidence was introduced upon this or any other point. The instructions are based upon the hypothesis that no attempt was made to prove any special intention on the part of the endorsers. The abstract naked question then, presented to the Court, is, what liability is assumed by the endorser (being other than the payee) of a negotiable promissory note, by the simple act of writing his name in blank upon the back of the note before or at the time of the delivery of it? 3 *Ohio St.*, 418.

The Court below took the view that Morrow and Wilder were liable only as commercial endorsers, and so charged the jury.

The authorities upon this question are exceedingly contradictory.

In Massachusetts and some other States, such an endorser is treated as an original promissor. *Story on Promissory Notes, Sec.* 476.

In some other States such an endorser is treated as a guarantor. *In Ohio,* 3 *Ohio Stat.*, 416, 13 *id.* 228; *in Pennsylvania,* 4 *Watts,* 448, 9 *id.* 353; *in New York, in earlier cases, Nelson* v. *Dubois,* 13 *Johns,* 175; *in New Jersey,*

*Crozier* v. *Chambers*, 1 *Spencer*, 256; (*referred to* 5 *U. S. D., Sec.* 354); *in South Carolina*, 5 *U. S. D., Sec.* 357; *in Illinois, Camden* v. *McCoy*, 3 *Scam*, 437; *in Illinois, Carroll* v. *Weld*, 13 *Ill.*, 228; *in California, Riggs* v. *Walde*, 2 *Cal.*, 485, 2 *id.* 605; *Story, Notes Sec.* 133.

The New York cases sustain the charge of the Court below to its fullest extent. *Seabury* v. *Hungerford*, 2 *Hill*, 80; *Hall* v. *Newcomb*, 7 *id.* 416; *Ellis* v. *Brown*, 6 *Barb.*, 282; *Dean* v. *Hall*, 17 *Wend.*, 214; *Spies* v. *Gilmon*, 1 *Com.*, 321; *Moore* v. *Cross*, 19 *N. Y.*, 227.

And this rule is sustained by the Courts of many other States. *Of Georgia, Collins* v. *Everitt*, 4 *Geo.*, 226, (9 *U. S. D.*, 373, *Sec.* 22; *Early* v. *Foster*, 7 *Black*, 35; *Taylor* v. *McCune*, 11 *Penn.*, 460; *Fear* v. *Dunlap*, 1 *Iowa*, 331.

In *Ellis* v. Brown, *Spies* v. Gilmore, and *Greenough* v. Smead, (3 O. S., 418), it is laid down that the endorser, not a payee, can be held liable *only* as a second commercial endorser, and that parole evidence is inadmissible to show a different intent.

The statute of frauds of New York and the old English statute, differ from the Kansas Statute. *Sec.* 2 *Com.*, 551; *Comp. L., p.* 569, *Sec.* 5.

The New York statute requires the collateral undertaking to express the *agreement* and the consideration. It has been held in Massachusetts that the contract of guaranty need not express the consideration. (2 *Pars. Cont.*, 294-5-6,) and in other States, *contra.* But in New York it has been held, even that the "agreement" implies both promise and consideration, and that the change in the phraseology of the statute has not changed the rule of decision. *Rogers* v. *Kneeland*, 10 *Wend.*, 218; *Bennett & Pratt* 4 *Den.*, 271.

In New York it has been held that a blank endorsement could not be construed into [a collateral guaranty because the consideration was not expressed. This was in answer to the argument that the endorsement should be held a guar-

anty rather than a commercial endorser. But it is evident the peculiar language of their statute has not influenced the Courts in deciding this question, as the law has been as well before as since the statute, that the agreement must express the consideration. The peculiarities of the statute certainly do not account for the New York rule relating to the admission of parole evidence to prove the facts and circumstances showing intention. The assent of all the minds of all the parties to the contract, to the same thing is necessary. Such a construction should be put upon a writing as will if possible prevent its failure as to any party. 3 *Ohio, S.*, 420-1.

There is nothing in the record adverse to the idea that this note was endorsed by defendant endorsers for the benefit of the payee and to enable him to raise money on it. It appears that Branscomb was plaintiff's agent—took the note in his own name and assigned it to Balentine before maturity.

The only objection to the view that the endorser is liable only as a commercial endorser, is that the contract must fail or be nugatory until the note is endorsed by the payee. It is submitted—if Branscomb acted as agent, is it not fair to presume that the note was endorsed by Morrow and Wilder, with the intent of all parties that it should be *endorsed to plaintiff*. The note is assigned to Balentine. The tendency of Courts is to hold the endorsers, being other than the payee, liable as commercial endorsers, if this can be done without making the contract fail. The obligation of Morrow and Wilder became perfect as soon as the note was endorsed. The note was made for the benefit of Branscomb's principal, and the endorsements were made for the same purpose, and took effect as soon as on the face of the paper, it had been appropriated to the end intended, viz—as soon as endorsed by Branscomb. The presumption is that Branscomb did endorse the note to his principal forthwith, hence no difficulty exists in considering Morrow and Wil-

der as commercial endorsers. But better that their contract should prove nugatory than that they should be bound against the plain form and rational construction of the contract. *See N. Y. Cases and* 8 *Metcalf*, 504.

But the instructions asked by plaintiff are not based on the hypothesis that any evidence was given changing this state of facts. The errors must be shown to be material, tangible *errors* appearing affirmatively from the record. *Sup. Ct., Kans.*, COBB, C. J.

Enough evidence should be given to show that the instructions are material and erroneous,—that the instructions were pertinent under the evidence submitted. And the presumption is that there was evidence to sustain the charge, the bill of exceptions failing to give all the evidence.

From this review of the authorities, it will appear that the law upon this question is in a state of most glorious uncertainty. In fact, we shall see that the Courts of New England and of the other States, which hold that the endorser in blank is liable as a maker of the note, have merely followed Massachusetts, and rely upon the decisions of that State as furnishing the leading authorities for that position.

The jurisprudence of Kansas is in its infancy. The common law is recognized as the rule by which the rights of our citizens are determined. When the law is established, our Courts have nothing to do but to acknowledge the principle and to apply it to the particular case. But when Courts of the highest respectability differ diametrically upon a certain question, and when other Courts still take a view of the question which differs from the other two classes, it appears to me that it is the duty of our Courts to decide the question upon principle; that is, upon the general analogies and clearly recognized maxims of the law and the dictates of justice, equity and right reason. There does not appear in the case before us to be any great preponderance of authority. But Courts, in their investigations,

should never forget that authorities are *weighed* and not counted, and in this view, we claim that the *weight* of authority is decidedly in our favor, and we do claim that the reason and justice of the thing sustain to the fullest extent, the decision of the Court below. This is admitted by the Massachusetts Court, (Union Bank of Weymouth *v.* Willis, 8 Met. See also, remarks on that case in Greenough *v.* Smead, 3 Ohio Stat., 415,) in which the Court say that if the subject were brought before them for the first time, they "should say that a name written on the paper, which name was not that of the payee nor following his name on his having endorsed it, was either of no validity to bind such individual, because the contract intended to be entered into, if any, was incomplete, or within the statute of frauds, or that he should be treated by the parties simply as a second endorser, leaving the payee and himself to settle their respective liabilities according to their own agreement."

This admission of the Massachusetts Court, in a case which reviews all the previous cases in that State, is sufficient to destroy the authority of those cases outside of that State.

This question arises on the construction of an agreement and is governed by the law-merchant. The end of all construction is to ascertain the true intent and meaning of the parties. Does the endorser intend to become primarily liable as a joint maker upon the note? This may be true in certain cases, where the endorser has an interest in the original consideration, and some of the Massachusetts cases afford illustrations of this very thing. (17 *Wend.*, 214-5). But it is not the legal presumption that the endorser has any interest in the original consideration. Such an endorser writes his name on the back of the note, with the intention that the maker shall pay the note when due. Such is the intent of the payee when he endorses. But the payee further intends that if the maker does not pay the note when due, he will pay it, *provided* the due and legal

course of business is pursued; that is, that the note be duly presented and notice of non-payment given to the endorser. The Massachusetts cases hold that the endorser in blank (being other than the payee) stands just in the position of one who becomes jointly and severally liable upon the face of the note by a joint and several promise to pay, signed by the party at the bottom of the note. If the party intended thus to bind himself, why did he not follow the old and well established form? Having departed from that form, there must be some good reason for it, and that reason is, that he intended to vary his liability. Having contracted by endorsement, he intended to become liable as a commercial endorser, according to the form and rational construction of the contract. *See remarks of Bronson, judge, in Seabury v. Hungerford, 2 Hill, on p. 82; also reasoning of the Chancellor in Hall v. Newcomb, 7 Hill, 417.*

I call the particular attention of the Court to the able judgment of Cowan, J., in Dean v. Hall, 17 Wend., 215, in which the authorities of New York and Massachusetts are reviewed.

If Morrow and Wilder are liable as commercial endorsers, they are entitled to all the privileges of that character, among which are demand and notice. (*Dean v. Hall,* 17 *Wend.,* 223.) And the petition is of course fatally defective, without the allegations of demand and notice. *See* 2 *Greenleaf's Ev., Sec.* 180, *a; also see* 155 *Note* 8, *subdivision, Spillman v. Weider,* 5 *How. Pr. R.,* 5; *How. Code,* 193-194; *Seney's Code,* 165, *d.*

If the Court shall be of opinion that Morrow and Wilder are liable (if at all) as commercial endorsers, it is clear that the judgment cannot be reversed; for the petition does not state facts sufficient to constitute a cause of action against endorsers, and this objection is not waived, although no objection was taken by demurrer or answer in the Court below. (*Code Civil Pro., Sec.* 98.) And this objection may be taken advantage of in the Supreme Court. (*Burham v. DeBevorce,* 8 *How., Pr. H.,* 159; *U. S. Bank*

v. *Smith*, 11 *Wheat.*, 173-174; *Portage Co. Bank* v. *Lane*, 8 *Ohio Stat.*, 406; *Harman* v. *Kelley*, 14 *O. R.*, 502; *Nash Plea. and Prac.*, 689.) This point is made to obviate any technical objection to our first instruction.

The first instruction of plaintiff contained two propositions of law, the second of which is, that if Morrow and Wilder endorsed the note in pursuance of an arrangement made by Blood and Branscomb when the money was loaned, then Morrow and Wilder are liable as joint makers. The object of this instruction was to evade the defense in the answer that Morrow and Wilder endorsed the note after the money had been paid over to Blood, and after the note had been delivered to Branscomb, and without receiving any consideration. This is a good defense, for if Morrow and Wilder should be considered joint makers, then they are only sureties, and if they executed the note after the full consummation of the agreement between Blood and Branscomb, and without any consideration, their undertaking would be *nudum pactum* and void. *See Parsons on Mer. Law*, 66, 3 *Kent*, 165; 1 *Parsons Contract*, 206-392-496; *Story on Notes, Sec.* 133-474, *note on* 606 *page.*

It is clear that the understanding between Blood and Branscomb cannot affect the rights of Morrow and Wilder. On the argument of the case in the District Court, the plaintiff cited Moies *v.* Bird, 11 Mass., 436, but the Court will find that the arrangement was made by the parties in that case, between the *surety*, Bird, and the payee. If Morrow and Wilder had made a previous agreement to endorse the note, they could not have defended on the ground of want of consideration. But that was not the instruction requested.

The first clause of the second instruction is not law, as we have shown, and the second clause does not strengthen the first. For admitting that Branscomb advanced the money on the joint credit of all the defendants, we fail to see how that illustrates the intention of Morrow and Wilder.

This might have been true, and Morrow and Wilder might have written a guaranty on the back of the note and signed ·it, or they might have stipulated in terms that they would be liable as endorsers only, or they might have signed the note as joint parties. Branscomb may have advanced the money on the credit of the defendants, and Morrow and Wilder may not have assumed the liability of joint makers, and their endorsement on the note plainly shows that they intended no liability other than that of endorsers.

The four distinct legal propositions embraced within the third instruction would perhaps be good law, if Branscomb and Balentine had had any interest in the note. But they were the agents of Firman, and had no beneficial interest whatever in the note. What a man does by his agent he does by himself. There was an assignment of the legal title to Balentine. This was an assignment to Firman. Balentine was not a purchaser for a valuable consideration ; nor was Firman such a purchaser. The transaction amounted to Firman's transferring to Firman. A purchase of personal property implies a consideration.

Three things are necessary to constitute an estoppel *in pais*. 1st. An admission inconsistent with the evidence which the party proposes to give or the title or claim which he proposes to set up. 2d. An action by the other party upon such admission; and 3d. Injury to him. (*See* 2 *Smith, L. C.*, 642-643-644, &c., where the whole subject is fully discussed.) Now, Branscomb and Balentine being agents of Firman, were Firman himself in these transactions. What action did either of these persons take which he would not have taken, if he had known that Branscomb had received three hundred dollars on the note ? And how has Firman been injured, or how could he be injured ? Would not Firman have received the note of Branscomb if he had been informed that Blood had paid the note in part ? See 2 Smith's L. C., 644, where the authorities are collated, which show that there is no estoppel when the act

of the party could have no influence on the conduct of the other party. As to injury to the other party, see 2 Smith, L. C., 645, and cases. And the influence must have been direct and immediate—do. 645, and necessary do. 646.

Estoppels are construed with great strictness. 1 *Greenleaf's Ev., Sec.* 22, 4 *Ment,* 270, *note.*)

The cases referred to, Part. 1, Cowan & Hill's notes to Phills. Ev., No. 225, p. 370, are all instances of a purchase for a valuable consideration, and are not applicable to our case. But in no event can there be any estoppel against Morrow and Wilder. Hence the instruction being bad in part, is bad in the whole.

The fourth charge of the plaintiff may be considered in connection with the third of the defendant. Now, taking the view of the case contended for by the plaintiff, Morrow and Wilder were merely sureties. It is absurd to say that, as a general proposition, the principal in a note cannot, in suit against himself and sureties, set off any payment he may have made to the plaintiff. (2 *A. M. L. C.,* 116 *Chitty, Contracts,* 542.)

By the answer of defendants it will appear that there was a special and distinct understanding between Blood and Branscomb that the money paid, and other matters set up in the answer, should be applied on the note. These are so connected with the claim of plaintiff that they constitute a counter claim—(Seney 136, Tinsley, *v.* Tinsley, 15 B. Mon., 460,) and might have been set up in a suit by Branscomb against the present defendants. (*Seney,* 138-139 ; *Briggs* v. *Briggs,* 20 *Bart.,* 477 ; *Parsons* v. *Nash,* 8 *How. Pr. R.,* 454). And if there was a special agreement to that effect, even under the old statutes of set-off, a debt due from the plaintiff to one of the members of a partnership, may be set off. (2 *Parsons,* 244, *note x.*) But these defendants are not partners. Is the set-off or counter claim available in a suit by Firman? If Blood dealt with Branscomb as principal and knew nothing of the agency,

there is no doubt.    2 *Parsons*, 250-251 ; *Chitty*, *Contracts*, 231 ; *Story on Agency*, *Sec.* 419-420-444 ; *Taintor* v. *Pendergrast*, 3 *Hill*, 72.

The second clause of the 5th instruction of plaintiff was formed to evade. the defense of Morrow and Wilder that they wrote their names upon the back of the note, after the money had been received by Blood and after the note had been delivered to Branscomb, and without consideration, and is evidently bad.    The abstract intention of Morrow and Wilder at the time they endorsed the note, will not bind them.    Perhaps no man ever put his name to a note as surety, after the delivery of the note, without expecting to be bound.    In the case of Tenney *v.* Prince, 4 Pick., 385, when the defendant put his name to the note nine months after it was executed, he might have thought the contract binding, but the Court held otherwise.    *Story Notes, Sec.* 474, *note.*)    A man may intend to sell land by parole, but he cannot do so.    A man may intend to make a promissory note but he does not do so if he neglects to use a stamp.    A. may honestly intend to pay B. one hundred dollars, when he gives B. his note for that amount as a present, but A. is not bound.    Legal obligations do not arise out of intentions, but from acts and words.    But all contracts must be mutual, and the question is what is the intention of all the parties to the contract.

The sixth instruction was erroneous, for the reason that the intent of Morrow and Wilder is not material.    We have seen also that the instruction must be correct in the very terms in which it is expressed.    The facts going to show the kind of liability they assumed, may, perhaps, have been proved by parole, but their secret thoughts and intentions do not bind them.    It is acts and words that make contracts.    Intent is a question of law, to be inferred from the facts.    The instruction is ambiguous and calculated to mislead a jury ; and there is nothing in the record to show that any parole proof was offered.    2 *How.*, 457.

The seventh instruction was properly refused, because it was fully included in the preceding instructions, and Courts are not required to repeat to the jury the same substantial propositions of law in different forms. *Kelly* v. *Jackson*, 6 *Peters*, 622.

But it is clear that the exceptions to the sixth and seventh instructions became wholly immaterial after the Court had given the first instruction of defendant and cannot be assigned for error. *Philadelphia &c. R. R. Co.*, v. *Howard*, 13 *How.*, 307.

We have already fully considered the first instruction requested by defendants.

The second is too clear for argument.

The third has been examined.

That there was no error in the fourth, is so plain that I will merely refer to the authorities: *Code of Civil Procedure, Sec.* 45-85-381 ; *How. Code*, 402, *Seney*, 315, *note c* ; *Lampkin* v. *Chisom*, 9 *O. Stat.* ; *Harrington* v. *Higham*, 15 *Barb.*, 524 ; *Parker* v. *Jackson*, 16 *id.* 33 ; *Brumskill* v. *James*, 1 *Kernan*, 294.

We feel satisfied that when the Court shall have followed us through the examination of this case the Court will be satisfied that there does not appear from the record " sufficient evidence to explain the exceptions," and from aught that appears from the bill of exceptions, both Morrow and Wilder may have proved to the Court and jury conclusively that they put their names upon the back of the note with the express understanding with all parties that they would be liable as endorsers. And if this was true, the first instruction of plaintiff was certainly correct. (*Story, Notes, Sec.* 479.) And the presumption is that there was evidence to support the verdict.

If, on an examination of the authorities, the Court should be of opinion that Morrow and Wilder were liable as guarantors, we contend that in that case they were entitled to

have the holder of the note make a demand upon the maker and to receive notice of non-payment.

This is a guaranty of a negotiable promissory note, and is placed, in this respect, upon an entirely different footing from ordinary guaranties; and the tendency of the Courts now is, to hold such a guarantor liable only after demand and notice, in like manner as a commercial endorser, and it is believed that the following authorities fully support this view of the law: 2 *A. M. L. C.*, 125, *and cases cited*; *Riggs* v. *Waldo*, 2 *Cal.*, 485 ; *Walker* v. *Forbes*, 25 *Ala.*, 139.

If demand and notice were necessary, as a condition precedent, then the petition is insufficient, and the judgment will not be reversed.

*By the Court*, KINGMAN, J.

Firman brought suit on a note of which the following is a copy :

"$500.00. Three months after date, I promise to pay to the order of Charles H. Branscomb five hundred dollars with interest at the rate of three per cent. per month, until paid. Value received.

"Lawrence, July 1, 1858.          JAMES BLOOD."
Which note was endorsed as follows :

"Abraham Wilder. Robert Morrow. Pay to J. S. Ballentine or bearer, without recourse to me, Chas. H. Branscomb. Pay to Lorenzo Firman, J. S. Balentine."

The amended petition contains the usual averments of a suit on a note, and also that the defendants, Morrow and Wilder, at the time and place of the execution of the note wrote their names upon the back of the note in blank. That Branscomb, the payee of the note, was the duly authorized agent of the plaintiff. That the money for which the note was given belonged to the plaintiff, who alone was beneficially interested therein, and that Balentine, to whom Branscomb assigned the note, was an agent of plaintiff, and received it as such and transferred it to plaintiff. Plaintiff

claims judgment against all the defendants in error as joint makers of the note.

The amended answer of defendants contained a general denial, and also set up a particular defense, substantially that Morrow and Wilder endorsed their names upon the note after the money had been received by Blood, and after the note had been delivered to Branscomb, and without any consideration passing to Morrow and Wilder from any person whomsoever. That Blood, when he received the money from Branscomb, had no knowledge of Branscomb's agency, but dealt with him throughout as principal, believing him to be such, and that on the 7th day of August Blood paid Branscomb $175, and received his duebill therefor, under a special agreement then made with Branscomb, that the money so paid by Blood and received by Branscomb, was to be applied as a payment on said note. That on the 1st day of September, 1858, Branscomb was further indebted to Blood in the sum of $101.17, for which Branscomb gave his duebill. That this sum was for goods, money, &c., and that it was understood and agreed between Branscomb and Blood, when the goods and money were advanced, that they were to go as a payment on the note sued on. All the time Blood, as well as the other defendants, believing that Branscomb was acting for himself, having no knowledge of his agency. That on the 29th of October, 1859, Blood offered to confess judgment for the amount of the note less the sums above mentioned, as having been paid.

On these pleadings the parties went to trial, and a verdict was rendered for the defendants, and the plaintiff brings the case to this Court, claiming that the Court erred in giving and refusing instructions to the jury.

The counsel for the defendant in error raises two preliminary questions which are to be disposed of before considering the main propositions.

It appears that the instructions asked for by the parties,

were not requested or given until after the argument of counsel on both sides was concluded.

It is insisted that the plaintiff by not asking his instructions before the argument of the case, waived his privilege as a matter of *right* that the Court should pass upon the instructions requested. This seems to be a reasonable conclusion from subdivision five of Sec. 277 of the Code, which provides that "when the evidence is concluded, either party may request instructions to the jury, which shall be given or refused by the Court."

We think, under the section of the Code, a part of which is just quoted, that if a party as a matter of right desires the Court to pass upon any proposition of law pertinent to the issue and the evidence, that he must prefer his request before the argument. But it does not seem to us that the defendant in this case is in a position to raise the question. The Court did not decline to pass upon the required instructions. The Court passed upon both, granting those asked by defendant and refusing those asked by plaintiff. If the Court had declined to pass upon the propositions embodied in the instructions, on the ground that the application was made too late, we do not think that this Court would decide that such an exercise of its discretion would be error. The Court did pass upon them. As much those offered by plaintiff as those offered by defendants. And if it did pass it was bound to give the law correctly.

Another objection of defendant in error is that the record does not show enough of the evidence for this Court to pass upon the law of the case, to show whether the instructions asked, even if law, were pertinent to the evidence offered. We think otherwise. It appears that the plaintiff offered evidence tending to prove his case and rested, and the defendants offered evidence tending to prove their defense and rested. This when the claim and defense are set out in the pleadings as fully as in this case, we think sufficient to "explain the exceptions," and this is all that the Code or good practice requires.

Firman v. Blood and others.

The Court at the instance of defendant charged the jury substantially, that Morrow and Wilder were liable upon the note in controversy, if at all, simply as commercial endorsers, and that they cannot be charged with payment unless the note had been protested and notice of non-payment given to them according to law. This character of endorser cannot be changed except by agreement at the time of signing, on which further or other liability is assigned.

The Court in this instruction evidently was governed in its view of the law by the late decisions in New York reported in Ellis v. Brown, (6 Barb., 287,) and Spies v. Gilmore, (1 New York Rep.,) and Hall v. Newcomb, (7 Hill, 416.) These cases all tend to support the principle laid down in the instruction, that persons, strangers to the note, by endorsing it at the time it is made, only become liable as second endorsers. Those curious to see the reasoning by which the legal fiction of making a party who is not the holder or owner of the note capable of passing the title to the note, can examine the cases referred to. The doctrine is an innovation upon the earlier rulings of that State, and is not sustained by any authorities elsewhere within our reach. Nor do we think the doctrine is any better sustained by reason than by authority. By writing his name upon the back of a note a person can not pass the note to the payee. That becomes his from another cause—the consideration for which the debt was created of which the note is the evidence. The note is delivered to the payee with the person's name upon it, and it is then complete so far as the endorser is concerned, whatever obligation he has incurred it is to the payee and not to a subsequent endorser. By giving the note with his name upon it to the payee, he authorizes the payee to write over his signature whatever is consistent with the understanding of the parties. To write over it an endorsement is to make the paper meaningless in the hands of the payee and binds them to nothing and gives the payee no benefit from the signature on

the back of the note. The note in this case must be held as complete, and perfect when delivered to Branscomb. Whatever liability Wilder and Morrow incurred at any time, was fully established when the note was delivered with their names on it.

In Ohio in the case of Greenough *v.* Smead, (3 Ohio. S., 416,) the Court lays down this principle, " That such a construction should be placed upon the contract as will prevent its failure, and will give effect to the obligation of each of the parties appearing upon it, at the moment the contract itself takes effect." This seems a safe and reasonable rule of construction, and one wholly disregarded in the New York cases cited. This leads to the conclusion that the instruction given in this case in the Court below was erroneous, and the case will have to be sent back on that account.

On the trial the plaintiff requested the Court to instruct the jury, that " if they believe that Morrow and Wilder endorsed the note in controversy at or before the time it was delivered to Branscomb, or in pursuance of an arrangement made by Blood and Branscomb when the money was loaned, then in either case Morrow and Wilder are liable as joint makers." The principle embraced in this instruction is one recognized in Massachusetts and most of the New England States, and also in Missouri. The cases are referred to and ably examined in the case of " Union Bank of Weymouth, (8 Met., 504, and Lewis *v.* Harvey, (18 Mo., 76.) It will be seen by these cases that a stranger by placing his name on the back of a note at the time it is made is presumed, in the absence of proof, to be an original promissor. While in Ohio and many other States, such a party, in the absence of proof, is presumed to be a guarantor. (*See Greenough* v. *Smead,* 3 *Ohio,* 416; *Riggs* v. *Waldo,* 2 *Cal.,* 485; 13 *Ills.,* 228; 4 *Watts,* 448; 1 *Spencer,* 256.) " The difference is this; in Massachusetts he is presumed to be an original promissor; in Ohio he is presum-

ed to be a guarantor, but in either State parole evidence is received to rebut the presumption and show what liability it was intended he should assume, and what relation he should sustain to the paper." *Greenough* v. *Smead.*

The contrariety of decisions makes it a perplexing and somewhat vexed question. We think the rule making him by presumption a guarantor, while it is equally supported by authority as that making him an original promissor, is more in conformity with reason and the general understanding of business men. It would not be the first impression of any man that one placing his name on the back of a note thereby becomes primarily liable. If all the parties to the note intended this, why not sign the note on its face in the usual way in which such obligations are perfected? The payee of such a note looks only to the signatures on the back of the note as sureties, and the law does all that can be required of it when it gives effect to the intention of the parties at the moment the instrument takes effect and becomes operative.

If the note is designed for the payee, then he cannot be held as endorser. He is a stranger to the note. He must be held either as an original promissor or guarantor. Nor does the subsequent assignment of the note change the responsibility of the parties bound. Whatever character they receive when the note is completed, is not changed by the transfer.

Holding then, that in settling this question for the first time, it is well to follow those decisions that seem best to interpret the original understanding of the parties, we think in the absence of proof, Wilder and Morrow should be held as guarantors.

On the point raised as to the propriety of the instructions. given and refused on the matter of payment, we must, in the condition of the record take the facts set up in the answer on that point as true, and in that view we think there was no error in the ruling of the Court below; but

Firman v. Blood and others.

for the misdirection of the Court as to the liability of Morrow and Wilder the cause is reversed and a new trial directed.

BAILEY, J., concurring, COBB, C. J., having been of counsel in the case below, did not sit in the case.