No. 99,476

RUTHIE M. HALL, *Appellant*, v. DILLON COMPANIES, INC.,
*Appellee.*
(189 P.3d 508)

778

Opinion filed July 25, 2008.

*Bruce Alan Brumley*, of Topeka, argued the cause and was on the brief for the appellant.

*Scott Mann*, of Mann Law Offices, LLC, of Hutchinson, argued the cause and was on the brief for the appellee.

*Timothy A. Short*, of Pittsburg, *amicus curiae*.

*Stephen J. Jones*, of Law Office of Stephen J. Jones, of Wichita, for *amicus curiae* Mona S. Carthel.

*Michael L. Snider*, of Snider & Seiwert, LLC, of Wichita, for *amicus curiae* Kansas Coalition for Workplace Safety.

*Jan Fisher*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, for *amicus curiae* Kansas AFL-CIO.

*Jeff K. Cooper*, of Topeka, for *amicus curiae* Kansas Association for Justice.

*Michael Wallace*, of Shawnee Mission, for *amicus curiae* Int'l Union of United Auto Workers, Local No. 31.

The opinion of the court was delivered by

ROSEN, J: This workers compensation case comes before the court on transfer from the Court of Appeals. The appellant, Ruthie M. Hall, challenges the percentage of disability determined by the

Workers Compensation Board (Board) and argues that this court should reverse its recent decision in *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 154 P.3d 494 (2007).

The relevant history leading to this appeal is not in dispute. Hall began her employment with Dillon Companies, Inc. (Dillons) in December 1995. She began to experience pain in her hands, arms, and shoulders toward the end of October 2001, and the pain grew worse during the course of her employment at Dillons. She was working as a delicatessen clerk at the time she was injured, working 40-hour weeks and earning a base hourly wage of $10.85. The parties stipulated that the injury arose in the course of her employment and continued through January 2004. She lost her job with Dillons for reasons unconnected to her injury, and her last date of employment there was January 30, 2004.

She was later hired by Wal-Mart, which offered her employment within her work restrictions. She is now employed as a delicatessen clerk at Wal-Mart, where she works 32-hour weeks at an hourly wage of $11. Although her hourly pay is higher at Wal-Mart, she earns 35.85 percent less on a weekly basis there than she earned at Dillons. Hall's medical condition does not impede her employment at Wal-Mart. Her duties at Wal-Mart are similar to her duties at Dillons, but the manner in which she performs the duties are sufficiently different that they do not conflict with her work restrictions.

On April 6, 2004, Hall filed an application for a hearing with the Division of Workers Compensation. Following a hearing, the administrative law judge (ALJ) found that she suffers from a 10 percent permanent partial disability in her left upper extremity and a 10 percent permanent partial disability in her right upper extremity. She awarded Hall 20 weeks of permanent partial disability compensation at $289.35 per week for each extremity, for a total award of $11,574. Following a timely application for review, the Board affirmed the ALJ's decision.

Hall filed a timely notice of appeal with the Court of Appeals, and this court assumed jurisdiction following transfer under K.S.A. 20-3018(c).

## ANALYSIS

### The Right-Hand Disability Rating

Hall initially asks us to reverse the finding that she suffers from a 10 percent permanent partial disability in her right extremity and maintains the uncontroverted evidence supports an additional 6 percent impairment.

### Standard of Review

The standard of review when an appellant challenges a factual determination by the Board was set out in *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 1, 161 P.3d 695 (2007). This standard is highly deferential to the factual conclusions that the Board reaches when substantial competent evidence supports those conclusions:

"An appellate court's scope of review on a question of fact arising from an administrative proceeding is defined by the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions [K.S.A. 77-601 *et seq.*]. The Act provides that the court shall grant relief *only* if an agency action is based on a determination of fact, made or implied, that is not supported by evidence that is substantial when viewed in light of the record as a whole. [K.S.A. 77-621(a)(7).] Substantial evidence in the workers compensation context is evidence possessing something of substance and relevant consequence to induce conviction that an award is proper; it furnishes a basis of fact from which an issue can be resolved reasonably. The court reviews the evidence in the light most favorable to the prevailing party and does not reweigh competing evidence or assess credibility of witnesses. The Workers Compensation Board's findings will be upheld if supported by substantial evidence even though other evidence in the record would have supported contrary findings. Appellate determination of whether the Board's findings of fact are supported by substantial competent evidence raises a question of law."

Under the Kansas Workers Compensation Act, the burden of proof rests "on the claimant to establish the claimant's right to an award of compensation and to prove the various conditions on which that right depends." K.S.A. 2007 Supp. 44-501(a). "Burden of proof" means "the burden of a party to persuade the trier of facts by a preponderance of the credible evidence that such party's position on an issue is more probably true than not true on the basis of the whole record." K.S.A. 2007 Supp. 44-508(g).

The Board's determination that a party did not meet his or her burden of proof is a negative finding. Our standard of review for a negative finding of fact is that the party challenging the finding must prove arbitrary disregard of undisputed evidence or must prove some extrinsic consideration such as bias, passion, or prejudice. *Nance v. Harvey County*, 263 Kan. 542, 551, 952 P.2d 411 (1997).

*The Disability Rating*

The Board awarded Hall compensation for a 10 percent permanent partial disability to her right upper extremity. Hall contends on appeal that uncontroverted evidence supports her claim for an additional 6 percent impairment for instability in the wrist of her right hand.

Dr. Pedro Murati, M.D., testified by deposition that Hall has an instability in the right wrist that was additional to the carpal tunnel injury noted by other experts. Dr. Murati examined Hall on September 7, 2004, and on July 7, 2005. He concluded that she was experiencing mild carpal tunnel syndrome and assigned her a 10 percent impairment to each arm. He also noted the wrist instability that gives rise to the issue now before us. The other examining medical specialists made no mention of the instability. Hall concludes that because no other medical evidence expressly rejected the wrist-instability rating, the evidence from Dr. Murati is uncontroverted and must be included in the disability calculation.

At least five medical consultants, including Dr. Murati, examined Hall as a consequence of the pain that she reported. Four of them made no mention of wrist instability.

Dr. Ian Yeats, M.D., examined Hall a number of times from November 2001 through September 2003. Dr. J.E. Harrington, D.O., examined Hall on September 10, 2002. He concluded at that time that she was experiencing a connective tissue disorder. Dr. Malaz Almsaddi, M.D., examined Hall on November 1, 2002, and on April 3, 2003, and found symptoms suggesting the onset of mild bilateral carpal tunnel syndrome. None of these physical examinations suggested to the examiners that Hall was experiencing instability in her right wrist.

At the request of the parties, the ALJ ordered a neutral medical examination by Dr. C. Reiff Brown. Dr. Brown examined Hall on March 7, 2006. He determined that she had mild bilateral carpal tunnel syndrome resulting from her employment at Dillons. He found she was experiencing nighttime paresthesias and intermittent numbness of the middle fingers of both hands, with pain extending upward into her arms. He recommended that she permanently avoid work involving frequent flexion and extension of her wrists at greater than 30-degree angles and that she avoid work involving tools that require grasping by the hands. Dr. Brown determined that Hall suffered a 10 percent impairment to each arm and a combined 12 percent whole-body impairment. He also made no mention of wrist instability in his reports or deposition.

Hall argues that, because Dr. Murati provided evidence of a wrist-instability injury and no other expert contradicted that evidence, the evidence is therefore undisputed and this court must find as a matter of law that she has a compensable wrist-instability injury. This argument appears to suggest that a medical examiner must explicitly and on the record rule out every possible diagnosis except for the specific diagnosis that he or she is making. Such a requirement would be burdensome and unnecessary. One doctor found wrist instability; four others who examined Hall did not find that instability. Dr. Murati himself testified that Dr. Harrington, who is an orthopedic surgeon, should have noticed the wrist instability if it had been present when Dr. Harrington examined Hall. The fact that the other examining doctors did not diagnose wrist instability is evidence enough to render the existence of the injury a disputed question of fact.

Hall has not proven "arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice." *Nance*, 263 Kan. at 551. The ALJ discussed Dr. Murati's findings but found "that Dr. Brown's opinion is the most reliable." The Board also set out Dr. Murati's diagnosis and agreed with the ALJ, finding that Dr. Brown's opinion was "the most persuasive."

Contrary to Hall's argument, the evidence was not undisputed. Neither the ALJ nor the Board disregarded Dr. Murati's diagnosis, and Hall makes no showing that bias, passion, or prejudice played

a role in the decisions. Although she has couched her argument in terms of a negative finding, Hall in fact is asking this court to reweigh competing evidence and to assess the credibility of witnesses. Such an evidentiary reevaluation lies outside our standard of review. See *Graham*, 284 Kan. 547, Syl. ¶ 1.

*Should This Court Overrule* Casco v. Armour Swift-Eckrich?

Hall next argues that we should overrule our recent decision in *Casco*, 283 Kan. 508. She contends the decision violates principles of stare decisis and represents bad public policy. She asks that this court reassert the statutory interpretation in effect prior to *Casco*.

The interpretation of statutory provisions in the Workers Compensation Act is a question of law. *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004). This court exercises unlimited review of questions of law in interpreting statutes. *Conner v. Occidental Fire & Cas. Co.*, 281 Kan. 875, 888, 135 P.3d 1230 (2006).

In *Casco*, we expressly overruled the parallel-injury rule originally formulated in *Honn v. Elliott*, 132 Kan. 454, 295 Pac. 719 (1931). 283 Kan. at 527. The workers compensation statutes provide for compensation for permanent partial injuries to certain body parts under a scheduled formula. This schedule is now located in K.S.A. 44-510d. Injuries resulting in temporary or permanent disabilities that do not fall under that schedule—nonscheduled injuries—are compensated under K.S.A. 44-510e. In *Honn*, this court determined that injuries to parallel body parts that individually fall under the scheduled injuries provisions are to be considered together as nonscheduled injuries.

We rejected this rule in *Casco*. We held that K.S.A. 44-510e nonscheduled injuries are the exception to the general rule of K.S.A. 44-510d. 283 Kan. 508, Syl. ¶ 10. When a worker suffers two parallel scheduled injuries and the employer rebuts the presumption of permanent total disability with evidence that the worker is able to engage in some type of substantial and gainful employment, the worker's award is calculated under K.S.A. 44-510d. 283 Kan. 508, Syl. ¶ 9.

Hall argues that *Casco* produces inequities for her and for other workers who have suffered injuries similar to hers. She notes that

bilateral injuries are generally more substantial than single injuries and may result in loss of employment. She also argues that this court has improperly exercised jurisdiction to modify the interpretation of a statute when that judicial interpretation has gained the legislature's tacit approval.

Although Hall appears to be correct in asserting that the award following our ruling in *Casco* is smaller than the award following the *Honn* rule, she fails to demonstrate that this difference is unjust. The record does not support her assertion that the parallel injuries to her arms made her work more challenging or limited her tasks more than an injury to either arm alone would have done. The record also reveals that she remained employed with Dillons for some time despite her injuries, injuries that the medical examiners all characterized as minor. She continues to perform much the same work for Wal-Mart, albeit for a slightly lower total compensation. Her workers compensation benefit is lower than it might have been under the old rule, but she shows no reason why this lower benefit is inequitable.

Hall also argues that the change in rules makes it more likely that employers will terminate the employment of workers who have minor bilateral injuries. This argument represents speculation—nothing in the record before us suggests that Dillons would have terminated her employment earlier if it had known that this court was about to overrule *Honn*. In fact, the record suggests that her termination was completely unrelated to her injuries and Dillons would have terminated her employment even if she had not sustained the injuries to her arms.

Hall asks this court to speculate about the effect of *Casco* on other employers and claimants. This court generally does not concern itself with hypothetical situations but must apply the law to the case before it. See *State v. Campbell*, 217 Kan. 756, 781, 539 P.2d 329 *cert. denied* 423 U.S. 1017 (1975) (appellant must show statute unconstitutional as applied to his or her own case); *Pyramid Life Ins. Co. v. Gleason Hospital*, 188 Kan. 95, 100, 360 P.2d 858 (1961) (courts "need not determine hypothetical cases"; courts should determine situation actually before them); *Firman v. Blood and others*, 2 Kan. 496, 508 (1864) (courts cannot declare law in

hypothetical cases); *State v. Neighbors*, 21 Kan. App. 2d 824, 828-29, 908 P.2d 649 (1995) (unconstitutional action may only be challenged by party directly affected and not merely by invoking rights of others).

Under the facts now before the court, *Casco* represents a more appropriate resolution than *Honn*.

Hall also maintains that this court has modified a statutory interpretation after the judicial interpretation has gained tacit legislative approval. The fundamental rule of statutory construction is that the intent of the legislature governs if the court can ascertain the legislature's intent. *Winnebago Tribe of Nebraska v. Kline*, 283 Kan. 64, 77, 150 P.3d 892 (2007). Hall's argument requires the court to address two principles for determining legislative intent.

First, the legislature is presumed to have expressed its intent through the language of the statutory scheme, and when a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed in the statutory language. 283 Kan. at 77. Second, when the legislature does not modify a statute in order to avoid a standing judicial construction of that statute, the legislature is presumed to agree with that judicial construction. *Halsey v. Farm Bureau Mut. Ins. Co.*, 275 Kan. 129, 136, 61 P.3d 691 (2003).

Hall notes that the legislature did not amend the workers compensation statutes after 1931 to reflect dissatisfaction with *Honn*. She argues that the legislature ratified the *Honn* doctrine when it voted to amend K.S.A. 44-510d in 1987. The 1987 amendment treated repetitive-use injuries to opposite upper extremities as separate scheduled injuries subject to a 20 percent higher compensation. L. 1987, ch. 187, sec. 6. This court found the amendment unconstitutional on equal protection grounds. *Stephenson v. Sugar Creek Packing*, 250 Kan. 768, Syl. ¶ 3, 830 P.2d 41 (1992).

Hall contends that the unconstitutional amendment, by neglecting to address non-repetitive-use injuries, demonstrated the legislature's tacit endorsement of *Honn*. Although Hall asserts that 1987 amendment proves that the legislature recognized that bilateral upper extremity injuries were nonscheduled injuries under K.S.A. 44-510e, that conclusion does not necessarily follow. The

1987 amendment not only specified that certain bilateral injuries were to be treated as scheduled injuries, the amendment also increased the percentage of the calculated loss to each extremity. It is unclear whether the legislature intended to reverse *Honn* for certain claimants or whether the legislature intended to increase the scheduled disability ratings for certain claimants.

Our analysis of this issue more properly looks to *Pruter v. Larned State Hospital*, 271 Kan. 865, 26 P.3d 666 (2000). In *Pruter*, we found that "K.S.A. 44-510d states the general rule for injuries to scheduled members . . . . If any rule is to be narrowly construed, it must be the exception created in *Honn*." 271 Kan. at 873. We noted that two simultaneous injuries do not necessarily result in a whole-body disability and emphasized the necessity of proving a total disability on the record. 271 Kan. at 875.

In *Pruter*, the claimant broke her right wrist and right ankle simultaneously when she fell at work. 271 Kan. at 866. The ALJ determined that the claimant had suffered a 6 percent impairment to her right upper extremity and a 7 percent impairment to her right lower extremity, converted those findings to a 7 percent functional impairment, and calculated the award as a non-scheduled injury.

On appeal to this court, the claimant argued that the simultaneous injuries to her arm and leg should be compensated as a permanent partial general disability based on *Honn* and on a 1959 amendment that included any combination of loss of an eye, hand, arm, foot, or leg. 271 Kan. at 874.

Noting that the claimant did not sustain major injuries or significant impairment, we concluded that the injuries did not cause permanent total disability by leaving her "completely and permanently incapable of engaging in any type of substantial and gainful employment" as required by K.S.A. 44-510c(a)(2). 271 Kan. at 875. As a result, the court held that the claim should be calculated as separate scheduled injuries. 271 Kan. at 876.

Although we did not explicitly state in *Pruter* that we were overruling *Honn*, our analysis effectively overruled *Honn*. In *Honn*, the court did not address the evidence indicating that the claimant was capable of performing some work, thereby rebutting the statutory

presumption that he was permanently and totally disabled. See R.S. 1923, 44-510(3)(a) (1930 Supp.) ("Loss of both eyes, both hands, both arms, both feet, or both legs, shall, *in the absence of proof to the contrary*, constitute a total permanent disability." [Emphasis added.]) The *Honn* court ignored the rebuttable presumption of permanent total disability created by R.S. 1923, 44-510(3)(a) (1930 Supp.) and applied it out of context to R.S. 1923, 44-510(3)(c) (1930 Supp.).

We did not, however, repeat this mistake in *Pruter*. We instead applied the K.S.A. 44-510c(a)(2) rebuttable presumption of permanent total disability as a preliminary step to determine the nature of the injury. After concluding the injuries did not cause a total, permanent disability, we applied the statutes relevant to permanent partial disability, K.S.A. 44-410d and K.S.A. 44-510e. Because K.S.A. 44-510d is the general rule and injuries to ·a wrist (forearm) and an ankle (lower leg) are included on the schedule, we did not have to consider K.S.A. 44-510e, which only applies to injuries not covered by the schedule. 271 Kan. 873, 876.

In *Pruter* we elected to forego the parallel-injury doctrine as a basis for determining whether multiple injuries should be considered scheduled. *Pruter* determined that compensation for injuries as scheduled or nonscheduled is based on whether evidence rebuts the presumption that the claimant suffered a permanent total disability and whether the individual injuries are included on the schedule. 271 Kan. at 875-76.

This court issued *Pruter* in 2000. We may understand the absence of legislative action to revise the effect of *Pruter* to represent legislative ratification of that decision. More important, however, is the application of the doctrine of statutory interpretation that directs us to consider the plain language of the statutes. As this court explained in detail in *Casco*, the plain language of the workers compensation statutes creates no parallel-injury rule and establishes a rebuttable presumption that a claimant is incapable of engaging in substantial and gainful employment.

The doctrine of stare decisis does not compel us to perpetuate an incorrect analysis of a statute enacted by the legislature more than 70 years ago. We have noted that " 'pillars of the law, like

pillars in a building, must be repaired or replaced from time to time to prevent the whole structure from collapsing.' " *Flagg v. Loy*, 241 Kan. 216, 221, 734 P.2d 1183 (1987) (quoting *Guffy v. Guffy*, 230 Kan. 89, 105, 631 P.2d 646 [1981]) (Prager, J., dissenting). " ' "Judicial devotion to the doctrine of *stare decisis* is indeed a justifiable concept to be followed by our courts. However, it cannot and must not be so strictly pursued to the point where our view is opaqued and reality disregarded." ' " 241 Kan. at 222 (quoting *Ebert v. Ebert*, 232 Kan. 502, 503, 656 P.2d 766 [1983]).

The extended error of *Honn* and the absence of legislative action to reverse that error do not compel this court to revive *Honn* as the governing rule for parallel-member injuries despite plain statutory language.

*Should* Casco *Operate Prospectively or Retroactively?*

Hall asks us to apply *Casco* prospectively, that is, to preserve the parallel-injury rule for injuries arising before the opinion in *Casco* was issued. She contends that the decision impairs vested rights and that her rights accrued prior to *Casco*. She relies on *Carroll v. Kittle*, 203 Kan. 841, 851, 457 P.2d 21 (1969), holding that departure from a prior rule should be restricted to cases arising in the future when retroactive application of the new rule "will result in a hardship to those who have relied upon prior decisions of the court."

Judicial decisions may be applied prospectively only when: (1) the decisions establish a new rule of law; (2) retroactive application would not further the principle on which the decisions are based; and (3) retroactive application would cause substantial hardship or injustice. *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 755, 27 P.3d 1 (2001).

*Casco* did not establish a new rule of law. As previously discussed, *Pruter* effectively overruled *Honn*. *Casco* did not create a rebuttable presumption that an injured worker may be able to work productively; *Casco* merely applied long-standing statutory language to the case before the court. In addition, the *Pruter* and *Casco* abandonment of the parallel-injury doctrine does not cause substantial hardship or injustice in the present case. It strains cred-

ibility to suggest that Hall would not have taken or continued employment with Dillons if she had believed that parallel injuries would be treated as scheduled, and not nonscheduled, injuries for workers compensation purposes. She continues to work productively at a job similar to the one she had before her injuries. It would be a greater injustice to compensate her under K.S.A. 44-510e when her injuries appear to be partial and so far appear to have a minimal impact on her employability.

### Does Casco Render K.S.A. 44-510d Unconstitutional?

Hall contends that *Casco* diminishes compensation to such a degree that workers no longer receive compensation sufficient to justify losing the right to sue for work-related injuries.

Determining the constitutionality of a statute is a question of law subject to unlimited de novo review. *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, Syl. ¶ 1, 942 P.2d 591 (1997). When evaluating a statute, this court will presume that the statute is constitutional. The court must resolve all doubts in favor of its validity, and before the statute may be stricken down it must clearly appear that the statute violates the constitution. In determining constitutionality, the court has the duty to uphold the statute under attack rather than defeat it. If it is reasonably possible, the court should construe the statute as constitutionally valid. The court should not strike down a statute unless the infringement of the superior law is clear beyond a reasonable doubt. *State v. Brown*, 280 Kan. 898, 899, 127 P.3d 257 (2006).

Hall asserts two grounds for unconstitutionality. She argues that no rational basis supports the distinction between scheduled and nonscheduled injuries following *Casco*. She also argues that the lower benefits that may result from abandoning the *Honn* parallel-injury doctrine violate due process by removing the quid pro quo in exchange for which workers gave up the right to sue.

We addressed the rational basis for K.S.A. 44-510d in *Franklin*, 262 Kan. at 857-60. We concluded that a rational basis underlies the distinctions between scheduled injuries and nonscheduled injuries, finding it is improper for this court to inquire into basis for

the legislative determination that not all injuries are equally disabling. 262 Kan. at 859.

Hall has not presented us with grounds for reconsidering *Franklin*. Allowing an employer to rebut the presumption of general disability does not alter the *Franklin* rationale that the legislature may determine which injuries are more likely to be more serious.

Hall also fails to establish that she has suffered a loss of due process by not receiving fair compensation for her injuries. All the medical experts who examined her agreed that her injuries are minor; she continues to be employed in the food-service industry; and she received scheduled compensation for the injuries to both her limbs. It is unclear what she has given up in order to receive this compensation. She fails to demonstrate that she would have likely received greater compensation—or even any compensation—in a tort action for wrongful injury.

Hall asserts that other workers may not receive fair compensation without the parallel-injury rule. As noted above, we will not concern ourselves with hypothetical parties. See *Campbell*, 217 Kan. at 781; *Neighbors*, 21 Kan. App. 2d at 828-29. Hall does not demonstrate that the workers compensation statutes are unconstitutional as they apply to her.

We find no basis for modifying the disability rating, and we find no persuasive challenge to our analysis in *Pruter* and *Casco*. The decision of the Workers Compensation Board is affirmed.