NOT DESIGNATED FOR PUBLICATION

No. 113,247

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAMON L. PIERSON,
*Appellee*,

v.

CITY OF TOPEKA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed February 19, 2016. Affirmed.

*Karl L. Wenger* and *Douglas M. Greenwald*, of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for appellant.

*Paul D. Post*, of Topeka, for appellee.

Before ARNOLD-BURGER, P.J., ATCHESON, J., and WALKER, S.J.

*Per Curiam*:  This is a workers compensation case in which the City of Topeka challenges on several grounds an award of benefits to Damon L. Pierson, an employee in its water pollution control division. We find the decision of the Workers Compensation Board to be supported by substantial competent evidence and to be without legal error. We, therefore, affirm.

Pierson had worked for the City for more than 10 years when he was injured. In September 2012, Pierson was assigned to what's known as a pump truck that maintains and cleans sewer lines using high pressure hoses. The work requires the crew members to

1

lift heavy manhole covers and to insert, maneuver, and withdraw the hoses. Those are physically demanding tasks. On September 25, Pierson reported to work with a stiff neck and told his supervisor he thought he had "slept wrong" the night before. Pierson didn't consider the pain sufficient to keep him from working. The work that day proved to be especially strenuous, and Pierson had increasing stiffness in his neck through the day.

Pierson finished his shift. But at the end of the day, he told his supervisor that he was quite sore. A coworker of Pierson's testified in the workers compensation proceeding that Pierson looked to be in severe pain. That evening, Pierson got worse. He felt numb from the waist up and could not move his neck or head. Pierson was concerned enough to call his supervisor. Pierson testified that the pain kept him awake all night. He went to see Dr. Raymond Magee, his regular doctor, the next morning. Dr. Magee advised Pierson to stay off work.

Dr. Magee diagnosed Pierson as having radiculopathy—compression of a nerve—attributable to the repeated heavy manual labor Pierson did on September 25. Dr. Magee had treated Pierson periodically for pain in his right shoulder for several years. Pierson also had some cervical disc degeneration. Dr. Magee considered the shoulder and disc conditions to be distinct from the radiculopathy and the pronounced stiffness and pain Pierson experienced on and after September 25. Dr. Magee had not previously diagnosed or seen symptoms suggestive of radiculopathy.

In November, Dr. Magee released Pierson to return to work with a significant limitation on the weight he could lift. The City could not provide Pierson with work that conformed to the limitation. Pierson did return to work in January 2013. In the meantime, he exhausted his sick leave, vacation time, and benefits under his short-term disability insurance. Pierson requested and received leave time donated by some of his coworkers. On January 30, Pierson filed a claim for workers compensation benefits.

Three medical doctors evaluated Pierson as part of the workers compensation proceeding. At the request of his lawyer, Pierson saw Dr. Peter Bieri. Based on a review of medical records and an examination of Pierson, Dr. Bieri concluded he suffered radiculopathy attributable to his work duties on or about September 25. Dr. Bieri concurred with the conservative course of treatment Pierson received. He determined Pierson to have a 15 percent whole body functional impairment. The medical records detailed treatment Pierson received for a low back injury in 2006 and the treatment Dr. Magee provided later for the right shoulder problems.

The City requested that Dr. Chris Fevurly evaluate Pierson. Dr. Fevurly reviewed the medical records and saw Pierson. Although he also found Pierson had a 15 percent whole person impairment, Dr. Fevurly concluded the prevailing factor causing the impairment to be "degenerative changes" in Pierson's spine and cervical discs and, thus, unrelated to his employment. Dr. Fevurly attributed a 5 percent impairment to Pierson's work.

The administrative law judge appointed Dr. Edward Prostic to make an independent medical examination of Pierson. Dr. Prostic reviewed Pierson's medical records, physically examined him, and took a clinical history. Based on that information, Dr. Prostic determined Pierson had radiculopathy attributable to the work he performed in September 2012. He also noted Pierson had some older disc disease and a disc protrusion. Dr. Prostic found Pierson to have a 15 percent whole body impairment, 10 percent of which resulted from the work Pierson did with the remaining 5 percent attributable to preexisting conditions.

The ALJ found Pierson suffered a compensable workers compensation injury on September 25, 2012, resulting from the strenuous physical labor he performed that day. The ALJ accepted Dr. Bieri's conclusion Pierson had a 15 percent impairment to the body as a whole attributable to the compensable injury. The ALJ also found that because

3

Pierson had received substitute compensation through paid sick leave and vacation, he was not entitled to temporary total disability for that time. The ALJ then fashioned a monetary award consistent with those determinations and allowed Pierson to apply for future medical benefits. The City appealed the award to the Board.

In its written order, the Board credited the conclusion of Dr. Bieri and Dr. Prostic that Pierson suffered a work injury and noted the absence of any preexisting diagnosis of radiculopathy even though Pierson had been treated for shoulder and low back problems. The Board also credited Dr. Bieri's conclusion attributing the 15 percent whole body functional impairment to the work injury. The Board, however, found the ALJ erred in denying Pierson temporary total disability under the criteria set out in K.S.A. 2015 Supp. 44-510c(b). Because the evidence did not establish the exact date Pierson returned to work—only that it was sometime in January 2013—the Board awarded him temporary total disability from September 26, 2012, through January 1, 2013. In short, apart from the issue of temporary total disability, the Board affirmed the ALJ's award. The City has timely appealed the Board's order.

This court reviews workers compensation cases under the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.* Our review is limited to the grounds in K.S.A. 2015 Supp. 77-621(c), including agency mistakes in construing the law or agency findings of fact lacking substantial support in the record evidence. If the issue turns on an interpretation of a statute or another question of law, we review anew without deference to the Board's decision. *Redd v. Kansas Truck Center*, 291 Kan. 176, 187-88, 239 P.3d 66 (2010); *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010). As to challenges to factual finding, K.S.A. 2015 Supp. 77-621(d) describes how the reviewing court must consider the record as a whole in evaluating a particular finding:

> "[T]he adequacy of the evidence . . . shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the

4

> relevant evidence in the record . . . cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

In this context, substantial evidence has some substance and relevance such that it supports the factual basis for a result or conclusion. *Ward v. Allen County Hospital*, 50 Kan. App. 2d 280, Syl. ¶ 2, 324 P.3d 1122 (2014); *Herrera-Gallegos v. H & H Delivery Service, Inc.*, 42 Kan. App. 2d 360, 363, 212 P.3d 239 (2009). The evidence need not be undisputed or overwhelming. As K.S.A. 2015 Supp. 77-621(d) directs, we do not substitute our view of the comparative weightiness of the evidence on either side of a factual determination but, rather, simply ask if the evidence supporting the Board's finding would discernably move the scale from zero and is not utterly undone by the record as a whole.

For its first two points on appeal, the City challenges the sufficiency of the evidence supporting the Board's findings that the prevailing factor in Pierson's injury was the work he did on September 25 and that Pierson had no preexisting functional impairment. Under the Workers Compensation Act, a "prevailing factor" is "the primary factor, in relation to any other factor." K.S.A. 2015 Supp. 44-508(g). Each of the issues turns on the record evidence and, in particular, the medical evaluations made in light of Pierson's clinical history, including his past back and shoulder problems.

Without rehashing everything contained in the record—we have summarized the key evidence; the Board and the ALJ offered considerably more detailed accounts in their decisions; and the parties, of course, are fully familiar with what they presented—the City effectively asks us to credit Dr. Fevurly's conclusions as the preferred ones. But we

would overstep our limited role in reviewing agency decisions if we were to oblige the City.

All of the physicians who evaluated Pierson specifically for this case relied on the same body of information: They examined Pierson and reviewed his medical history. Even so, they arrived at varying professional conclusions. But none of the three offered a conclusion so outlandish or irreconcilable with the available evidence that it could be discarded as utterly unfounded. That, however, is more or less what we would have to find to reject the Board's reliance on Dr. Bieri's opinion. Both he and Dr. Prostic concluded Pierson's injury resulted primarily from the especially rigorous work he did on September 25. Dr. Magee's diagnosis is also consistent with their assessment, although he did not offer a formal evaluation during the workers compensation process.

Dr. Bieri and Dr. Prostic offered expert opinions that the work Pierson was doing caused the radiculopathy and his pain and immobility. They discounted the earlier low back and shoulder problems and the disc disease as possible prevailing factors. As the Board pointed out, the radiculopathy was unlike the earlier conditions for which Pierson had been treated, and he had never been diagnosed with radiculopathy before September 25. Those considerations furnish substantial evidence supporting the Board's finding that Pierson's work was the prevailing factor in his injuries. Our review is, by statutory design, distinctly deferential. In keeping with that standard, we cannot reject the Board's factual finding for lack of substantial support in the evidence.

The same holds true for the second point. Dr. Bieri's conclusion that Pierson suffered a 15 percent whole body impairment has substantial support in the evidence. Again, our view rests on the same considerations—the absence of any previous radiculopathy and the deference we accord the Board. All three physicians agreed on the degree of Pierson's impairment and differed only as to how it should be apportioned as between work-related causes and preexisting conditions. On that issue, Dr. Fevurly

6

attributed a third of the impairment to work and the balance not. Dr. Prostic reversed that division. And, as we have said, Dr. Bieri attributed the full impairment to Pierson's work. On that sort of narrow issue that necessarily entails a significant measure of professional judgment, we will not second-guess the Board, especially when all of the physicians drew on an essentially identical body of information in arriving at their judgments. This was not a case in which one of the experts relied, in part, on salient information another expert either wasn't provided or chose to disregard, thereby weakening his or her conclusions.

As to those points on appeal, we find no basis to upset the Board's factual findings.

For its last point, the City contends the Board erred in awarding Pierson temporary total disability, since he was compensated through sick leave, vacation pay, and other sources. We perceive no dispute about the pertinent facts. This issue, then, presents a question of law turning on the interpretation of the controlling statute.

In construing statutory provisions, appellate courts are to discern legislative purpose and intent from the language used, and they are to give effect to that purpose and intent. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 725-26, 317 P.3d 70 (2014); *State v. Gracey*, 288 Kan. 252, 257, 200 P.3d 1275 (2009); *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008). It is not the courts' business or function to add to or take away from the language of a statute. And the courts should not impose some meaning on a statute beyond what the words themselves convey through their common definitions or any particularized statutory definitions. *Bussman*, 298 Kan. at 725-26. The Kansas Supreme Court has been particularly vigilant in applying the plain-meaning rule to workers compensation statutes. See *Redd*, 291 Kan. at 197-98; *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-10, 214 P.3d 676 (2009).

Under K.S.A. 2015 Supp. 44-510c(b)(2)(A), an employee should receive temporary total disability when, because of a compensable injury, he or she is "incapable

of engaging in any type of . . . gainful employment." As provided in K.S.A. 2015 Supp. 44-510c(b)(2)(B), an employee is likewise entitled to temporary total disability when a treating physician imposes temporary restrictions as a result of a work injury that an employer cannot accommodate. Here, Dr. Magee forbade Pierson from working until mid-November 2012, meeting the requirements of K.S.A. 2015 Supp. 44-510c(b)(2)(A). And he allowed Pierson to return to work with exceptionally restrictive conditions the City could not satisfy, meeting the requirements of K.S.A. 2015 Supp. 44-510c(b)(2)(B).

Accordingly, Pierson should have received temporary total disability until he returned to work without restrictions in January 2013, as the Board found. The City does not argue that Pierson failed to meet the requirements of those portions of the governing statute. The City simply contends that because Pierson used sick leave, exhausted his vacation and insurance, and received donated leave and, thus, offset the income he lost because he couldn't work, he had no statutory right to temporary total disability. The result, in the City's view, amounts to "double dipping" in a way that is "inappropriate." But the City offers no statutory argument showing how K.S.A. 2015 Supp. 44-510c or any other part of the Workers Compensation Act requires an injured worker to forgo temporary total disability benefits because he or she has accumulated significant reserves of either sick leave or vacation time. We see none.

To the contrary, K.S.A. 2015 Supp. 44-510c(b)(4) specifically precludes an employee from "receiv[ing] temporary total disability benefits for those weeks during which the employee is also receiving unemployment benefits." In crafting that subsection, the legislature provided a specific offset against temporary total disability benefits. But the legislature chose not to include offsets for other sources of payments that effectively substitute for wages. We think that provides a fairly unmistakable refutation of the City's argument. A common canon recognizes that the inclusion of one thing in a statute may be taken as indicating legislative intent to exclude like things not mentioned. *In re Marriage of Killman*, 264 Kan. 33, 42, 955 P.2d 1228 (1998); *Harwood*

8

*v. Feyh*, No. 108,603, 2013 WL 5187637, at \*4 (Kan. App. 2013) (unpublished opinion) (recognizing and applying canon to different section of Workers Compensation Act), *rev. denied* 299 Kan. 1269 (2014). The canon applies here.

The City and other employers undoubtedly would prefer an offset for sick leave and vacation time. But the legislature hasn't adopted such a limitation on temporary total disability. The Board properly awarded Pierson those benefits.

Affirmed.