NOT DESIGNATED FOR PUBLICATION

No. 128,535

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of K.G., a Minor Child.

MEMORANDUM OPINION

Appeal from Johnson District Court; KATHLEEN SLOAN, judge. Submitted without oral argument. Opinion filed November 14, 2025. Appeal dismissed.

*Richard P. Klein*, of Lenexa, for appellant natural mother.

*Maria C. Davies*, assistant district attorney, and *Stephen M. Howe*, district attorney, for appellee.

Before MALONE, P.J., COBLE, J., and SEAN M.A. HATFIELD, District Judge, assigned.

PER CURIAM: Mother appeals the district court's decision appointing a substitute permanent custodian for her biological daughter K.G., to replace the permanent custodians originally appointed by the court in 2012. Mother raises various claims on appeal including that the district court erred by finding Mother lacked standing to request a reintegration plan and that the district court exceeded its authority by appointing a substitute custodian. But for reasons we will explain below, we find that this court lacks jurisdiction under K.S.A. 38-2273(a) to review the district court's decision appointing a permanent custodian in a child in need of care (CINC) case; thus we dismiss the appeal.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2010, the State filed a CINC petition in Crawford County District Court on behalf of K.G., born in 2009, requesting the court to declare her CINC due to a lack of adequate parental care and concerns of her failure to thrive. Two years later, on March

1

14, 2012, the district court, with the consent of Mother and Father, created a permanent custodianship for K.G. under K.S.A. 38-2272, placing her with her paternal grandparents. At the hearing on the matter, the district court addressed Mother and Father to ensure that they understood the gravity of their decision:

"[I]f I appoint [Grandparents] as the guardians for [K.G.], it will become final. They will be [K.G.'s] guardians until she turns 18 and there is nothing you can do about that down the line.
"If you change your mind and you wish you hadn't done this, there is nothing you can do about it. Did you both understand that?"

Mother and Father both responded that they understood and confirmed that they consented to the appointment of K.G.'s grandparents as her permanent custodians. At the same hearing, the district court addressed the paternal grandparents and explained their responsibilities as permanent custodians of K.G., and the grandparents accepted those responsibilities. The district judge ended the hearing by stating:

"Now, as I indicated earlier, I will put [K.G.'s] file in dormancy. We will have no further hearings. The only time we would have another hearing would be if you guys are not able to continue to be the permanent custodians of [K.G.]. Of course, we would hope nothing happens to either one of you. But if something does happen, then we would have this file available to open this back up and go from there."

On December 1, 2022, the State filed a CINC petition in Johnson County. The petition noted that K.G. was 13 years old and was living with her paternal aunt in Johnson County, not her permanent custodian grandparents, and that K.G. had reported physical and sexual abuse by her grandmother and grandmother's boyfriend. The petition noted that paternal grandfather had passed away on January 14, 2014. The State alleged that K.G. was (1) without adequate parental care, control, or subsistence; (2) without the care or control necessary for her physical, mental, or emotional health; (3) had been

2

physically, mentally, or emotionally abused or neglected or sexually abused; and (4) had a permanent custodian appointed and that the permanent custodian was no longer able or willing to serve. K.S.A. 38-2202(d)(1), (d)(2), (d)(3), and (d)(13). That same day, the district court placed K.G. in temporary custody of the Department for Children and Families (DCF).

Mother and Father received notice of the Johnson County CINC proceeding and were appointed legal counsel by the district court. The district court also granted paternal aunt interested party status—K.G. had been living with paternal aunt for the past eight years by the time the State filed its CINC petition. The district court appointed a guardian ad litem (GAL) and a court-appointed special advocate for K.G. The district court later ordered that paternal grandmother and her boyfriend have no contact with K.G.

At a hearing on April 3, 2023, after receiving no contest statements from Mother and Father, the district court adjudicated K.G. as a CINC on the grounds alleged by the State. At that hearing, Mother stated that although she was not opposed to paternal aunt being appointed permanent custodian, she wanted to attempt to seek reintegration, even though she had not seen K.G. in eight or nine years. At a later hearing, Mother stated that she was no longer willing to agree to a new permanent custodian and insisted on pursuing reintegration or being appointed permanent custodian herself.

On December 12, 2023, the State filed a "Motion for Appointment of Substitute Permanent Custodian or, In the Alternative, Motion for Transfer of Venue to Crawford County." The State attached the original 2012 Crawford County CINC petition, the order appointing K.G.'s paternal grandparents as permanent custodians, and the transcript from the hearing where Mother and Father had consented to the permanent custodianship.

In making its request for the court to appoint a substitute permanent custodian, the State noted that Mother and Father's consent was final and permanent when executed,

3

that the validity of their consent had never been challenged, and therefore Mother and Father had no standing "to request a reintegration plan or object to the appointment of a substitute permanent custodian." The State argued that the appointment of a permanent custodian was a permanent decision and that the CINC code contained no provision permitting Mother or Father to attempt to regain custody of K.G. As such, the State suggested that "the only appropriate remedy" was "to appoint a substitute permanent custodian, as [Grandfather] has passed away and [Grandmother] is no longer a safe and appropriate permanent custodian for [K.G.] due to the concerns of abuse in the home." Alternatively, the State requested that if the district court would not appoint a substitute permanent custodian, that it should transfer venue back to Crawford County.

At a hearing held on February 14, 2024, with all parties present, the district court announced it had resolved the venue issue with Crawford County. The court explained that the "Crawford County child in need of care matter where they created the original custodianship has been released" and because K.G. resided in Johnson County, it retained jurisdiction. None of the parties objected to the resolution of the venue issue.

Mother opposed the State's motion and asked the district court to either consider pursuing reintegration or consider her a permanent custodian to K.G. Mother argued that the permanent custodianship that had been ordered in Crawford County in 2012 did not survive after the Johnson County District Court declared K.G. to be a CINC and placed her in the temporary custody of the State. She asserted that because K.G. was in the temporary custody of the State, not her grandparents, K.G. no longer had a permanent custodian, and the CINC code makes no reference for the procedure for appointing a substitute permanent custodian. Moreover, Mother contended that her prior consent to the permanent custodianship of K.G.'s grandparents could not transfer to another party. Under this rationale, Mother contended that she was attempting not to regain custody from a permanent custodian but from the State—in fact, Mother conceded that there were no legal grounds for a parent to regain custody from a permanent custodian.

4

The district court held a hearing on June 3, 2024, and the parties argued their respective positions. The GAL advocated for the State's position to appoint paternal aunt as the substitute permanent custodian for K.G.

On July 11, 2024, the district court issued its memorandum decision granting the State's motion to appoint a substitute permanent custodian to K.G. and scheduling a hearing to appoint paternal aunt to serve in that role. After setting forth the procedural history of the case, the district court began by addressing Mother's standing to challenge the State's motion to appoint a substitute custodian. The district court explained, "The consent to and appointment of a permanent custodian is permanent. . . . Allowing a parent to regain custody following a consent to and appointment of a permanent custodian, even after a K.S.A. 38-2202(d)(13) finding, would undermine the meaning of the plain statutory language." Along these lines the district court stated that "[t]here has been a mistaken belief by all, . . . giving deference to the position of the parents. . . . [T]hey do not have standing to request a reintegration plan, and the Court questions their standing to object to the appointment of a substitute permanent custodian."

The district court addressed Mother's claim that her consent to the appointment of a permanent custodian did not apply to the appointment of a substitute custodian:

> "Counsel for [M]other acknowledges that the parents willingly consented to the permanent custodianship but argues that their consent was conditional and limited to the appointment of paternal grandparents serving as custodians. After a permanent custodian has been appointed, K.S.A. 38-2272(d) allows a court to add language imposing conditions and limitations to the order. The Crawford County order contains no such limitations or modifications. The parents' opportunity to limit their consent to the grandparents serving as custodians was available when the custodianship was created, was not utilized, and is not available now. Revocation of consent by a parent after execution of a permanent custodianship was contemplated in the statutory construction and rejected. K.S.A. 38-2272(g)(l): 'A consent is final when executed, unless the parent

5

whose consent is at issue, prior to issuance of the order appointing a permanent custodian, proves by clear and convincing evidence that the consent was not freely and voluntarily given. The burden of proving the consent was not freely and voluntarily given shall rest with that parent.'"

Ultimately, the district court found that under the circumstances, "it is for the Court to appoint a substitute or successor permanent custodian, and not further destabilize the child by opening the door back up to the parents." The district court explained, "[T]he permanent custodianship, originally created in Crawford County, Kansas, still exists. [Grandmother] remains the named permanent custodian, even though [K.G.] is in DCF custody." As such the district court concluded, "A permanent custodianship is permanent, and with the named permanent custodians unable or unfit to continue to serve, a successor permanent custodian needs to be named."

Before announcing its decision to name paternal aunt as K.G.'s substitute permanent custodian, the district court addressed Mother's request for reintegration or to be considered for the role of permanent custodian:

> "Counsel for [M]other argues that even after creation of a CINC permanent custodianship, if, pursuant to K.S.A. 38-2202(d)(13), the permanent custodians are no longer able to serve, the parents retain a right to determine placement of the child. The Court finds no statutory authority for this claim. Counsel for [M]other has requested that if a substitute permanent custodian is to be appointed for [K.G.], she be considered to serve as permanent custodian. A permanent custodianship is created in CINC statutory law and is dictated by CINC statutory law. Appointment of a parent as permanent custodian is contradictory to the application of K.S.A. 38- 2272. 'Courts are authorized to appoint permanent custodians for a child adjudicated as a child in need of care (CINC), a legal relationship created strictly for the resolution of CINC cases when termination of parental rights is not in the best interests of the child but *placement of the child in the parental home is also not in the child's best interests.' Matter of Guardianship of B.H.*, 309 Kan. 1097, 442 P.3d 457, 462 (2019) (Emphasis added)."

6

The district court found there was clear and convincing evidence to support the State's request for the appointment of a substitute permanent custodian for K.G. It revoked paternal grandmother's appointment as permanent custodian and announced its intention to name paternal aunt as substitute permanent custodian for K.G. The district court scheduled a later hearing to create the permanent custodianship. Mother timely filed a verified notice of appeal from the district court's judgment.

ANALYSIS

Mother's brief leads off by acknowledging there is "potentially an initial question of this Court's jurisdiction to hear the case." She contends this court has jurisdiction to consider her appeal from the district court's decision appointing a substitute permanent custodian because it was "a defacto order of disposition." Alternatively, she suggests this court has jurisdiction "because the primary issues in the case involve jurisdictional questions or questions involving the district court's authority to act." Turning to the merits, Mother claims the Johnson County District Court "lacked jurisdiction" over the Crawford County permanent custodianship proceedings because there was no change of venue. Mother next claims the district court erred by finding she lacked standing to request a reintegration plan or to object to the appointment of a substitute custodian. Finally, she claims the district court exceeded its authority by appointing a substitute custodian.

The State maintains that appellate courts lack jurisdiction to review a district court's order regarding a permanent custodianship because such a decision is not included in the listed categories of appealable orders in a CINC case under K.S.A. 38-2273(a). On the merits, the State contends that the Johnson County District Court had jurisdiction to adjudicate a CINC petition filed in Johnson County where K.G. resided and that no parties objected to the venue transfer from Crawford County. The State also argues that Mother lacked standing to request a reintegration plan or to object to the appointment of a

7

substitute custodian after previously consenting to the appointment of a permanent custodianship. Finally, the State argues that the district court did not exceed its authority by appointing paternal aunt as the substitute permanent custodian.

*Does this court have jurisdiction to review the district court's ruling appointing a substitute permanent custodian for K.G.?*

We will first address the competing claims whether this court has jurisdiction over this appeal. Whether jurisdiction exists is a question of law over which this court may exercise unlimited review. *In re Care & Treatment of Emerson*, 306 Kan. 30, 34, 392 P.3d 82 (2017). This court has a duty to question jurisdiction on its own initiative. And when the record discloses a lack of jurisdiction, it must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016).

The right to appeal is statutory. With some exceptions, appellate courts only have jurisdiction to entertain an appeal if it is taken in the manner prescribed by statutes. 304 Kan. at 86-87. The revised Kansas Code for Care of Children (Code) contains a jurisdiction statute, K.S.A. 38-2273(a), which sets forth the procedure and requirements for an appeal in a CINC case. *In re N.A.C.*, 299 Kan. 1100, Syl. ¶ 2, 329 P.3d 458 (2014). The statute limits appealable orders to five categories: "An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights." K.S.A. 38-2273(a). As our Supreme Court has explained, "each appealable order occurs in a sequence leading to permanent placement for the child in need of care and the terms are to be considered in context with that statutorily created setting." 299 Kan. at 1116.

Mother claims an order appointing a substitute permanent custodian fits within the category of a dispositional order because it was "a determination of K.G.'s permanency goal." Mother cites K.S.A. 38-2253(a)(1), which outlines the purpose and scope of a

8

dispositional hearing as including a district court's ability to enter an order regarding "[c]ase planning which sets forth the responsibilities and timelines necessary to achieve permanency" and "custody of the child." She asserts the district court's order appointing a substitute permanent custodian fell within this classification and is therefore appealable.

Mother's argument misconstrues the nature and timing of orders of disposition as compared to an order appointing a permanent custodian. Kansas appellate courts have consistently held that "disposition" is a term of art within the Code. *In re N.A.C.*, 299 Kan. at 1116; *In re A.S.*, 52 Kan. App. 2d 173, 175, 364 P.3d 1203 (2015). Under K.S.A. 38-2255 and K.S.A. 38-2256, an order of disposition is made at the time of or within 30 days of adjudication that determines the placement of the child or any other order entered when managing the child's placement until the order terminating parental rights is entered. *In re N.A.C.*, 299 Kan. at 1120; *In re A.S.*, 52 Kan. App. 2d at 176. In other words, an order of disposition encompasses the district court's determinations about whether to leave a child in their home, place them in foster care, or make some other placement leading up to a more final decision or permanent placement.

As the State points out, a decision appointing a permanent custodian on the other hand is more like a decision terminating parental rights than an order of disposition. Although a district court may appoint a permanent custodian without first terminating parental rights, a permanent custodian assumes the legal rights and obligations of a parent, including physical custody of the minor child and the authority to make decisions about the child's care and welfare. K.S.A. 38-2269(g)(3); K.S.A. 38-2272(c). A permanent custodianship intrudes nearly as deeply and consequentially into a parent's rights as termination: "As the name implies, the appointment of a permanent custodian is permanent—until the child reaches the age of majority. The code contains no provision allowing a natural parent to regain custody from a permanent custodian." *In re L.D.*, No. 119,613, 2019 WL 257979, at *3 (Kan. App. 2019) (unpublished opinion).

9

A dispositional order, as used in the Code, refers to orders made after adjudication about the custody or placement of a child, including directives for counseling, child support, and visitation rights, that guide interim placement until permanency planning or termination of parental rights occurs. Given the permanent nature of a decision appointing a permanent custodian (or appointing a substitute permanent custodian), such an order cannot be classified as an order of disposition without stretching the statutory definition of a dispositional order beyond recognition. Because the district court's order appointing a substitute permanent custodian is not an order of disposition as included in the five categories of appealable orders in K.S.A. 38-2273(a), Mother's argument that this court has jurisdiction under that category of order fails.

At least one prior decision from this court supports this conclusion. In *In re D.M.*, No. 122,561, 2020 WL 5490880, at *9-10 (Kan. App. 2020) (unpublished opinion), this court determined that a district court's decision to appoint a permanent custodian is not appealable because it is not an order terminating parental rights. This court explained its conclusion regarding jurisdiction as follows:

> "The revised Kansas Code for Care of Children has a separate jurisdiction statute, K.S.A. 2019 Supp. 38-2273(a), which provides: 'An appeal may be taken by any party or interested party from any order of temporary custody, adjudication, disposition, finding of unfitness or termination of parental rights.' According to our Supreme Court, '[t]he statute creates five categories of appealable orders in a [child in need of care] case.' *In re T.S.*, 308 Kan. 306, 310, 419 P.3d 1159 (2018).
> "In *In re T.S.*, the Supreme Court held that 'any . . . order . . . of termination of parental rights' meant 'an order that ends parental rights, and nothing more.' 308 Kan. at 312. As a result, our Supreme Court dismissed a grandfather's cross-appeal of a district court ruling that appointed a permanent custodian rather than granting a motion to terminate parental rights. The Supreme Court reasoned that the plain language of the statute permitted an appeal of the termination of parental rights but not an appeal of the district court's *refusal* to terminate parental rights. 308 Kan. at 312. In this holding our

Supreme Court specifically declined 'to create a new category of [child in need of care] appeals where the Legislature has declined to do so.' 308 Kan. at 312.

"The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State ex rel. Schmidt v. City of Wichita*, 303 Kan. 650, 659, 367 P.3d 282 (2016). In analyzing a statute, we must first ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

"A plain reading of K.S.A. 2019 Supp. 38-2273(a), in concert with *In re T.S.*, yields the conclusion that the Legislature did not intend to provide Kansas appellate courts with jurisdiction to review a district court's ruling creating a permanent custodianship for children in need of care. Accordingly, this portion of Father's appeal is dismissed for lack of jurisdiction." *In re D.M.*, 2020 WL 5490880, at *9-10.

The same rationale applies here. The Legislature has specified a list of appealable orders in CINC cases in K.S.A. 38-2273(a), and a decision regarding the appointment of a permanent custodian is not on that list. If an order appointing a permanent custodian is not appealable under K.S.A. 38-2273(a), it follows that an order appointing a substitute permanent custodian is not appealable under K.S.A. 38-2273(a).

Finally, Mother argues that this court has jurisdiction over this appeal because the primary issues involve jurisdictional questions or questions involving the district court's authority to act. Mother offers no case authority to support this claim. Although we recognize that subject matter jurisdiction can be raised at any time, the Kansas Supreme Court has recently clarified that "subject-matter jurisdiction is simply the constitutional power of courts in this state to decide disputes." *Nicholson v. Mercer*, 319 Kan. 712, 717, 559 P.3d 350 (2024). Generally speaking, statutes are the mechanism for the law to define jurisdiction. *In re A.A.-F.*, 310 Kan. 125, 135, 444 P.3d 938 (2019). K.S.A. 38-2203(c) provides that "[t]he court acquires jurisdiction over a child by the filing of a petition pursuant to this code." Here, the State filed a CINC petition in Johnson County alleging that K.G. was a CINC under K.S.A. 38-2202(d)(1), (d)(2), (d)(3), and (d)(13).

11

Thus, Johnson County acquired jurisdiction over K.G. when the State filed its petition there.

As for proper venue, contrary to Mother's assertion that "[v]enue is a matter of jurisdiction," the Kansas Supreme Court has clarified: "'[V]enue is not a jurisdictional matter, but a procedural one.'" *State v. Barnes*, 320 Kan. 147, 158, 563 P.3d 1255 (2025). There is no question that venue was proper in Johnson County because K.G. resided there with her paternal aunt when the CINC petition was filed. The record also shows that Mother did not object to the transfer of venue from Crawford County to Johnson County. "[A]s a general rule, parties are free to waive venue because it is a procedural matter that relates to a litigant's convenience, rather than a jurisdictional issue." *Kansas City Grill Cleaners v. BBQ Cleaner*, 57 Kan. App. 2d 542, 547, 454 P.3d 608 (2019).

In sum, we lack jurisdiction over Mother's appeal because an order appointing a substitute permanent custodian is not an appealable order in a CINC case under K.S.A. 38-2273(a). The Kansas Legislature has not amended K.S.A. 38-2273(a) since *In re N.A.C.* was decided. And our Supreme Court more recently reaffirmed its holding and analysis in *In re N.A.C.* in *In re N.E.*, 316 Kan. 391, 413-18, 516 P.3d 586 (2022). When the Legislature fails to modify a statute to avoid a standing judicial construction of the statute, courts presume the Legislature agreed with that judicial construction. *Hall v. Dillon Companies, Inc.*, 286 Kan. 777, 785, 189 P.3d 508 (2008). We offer no opinion on the merits of Mother's claims that the district court should have considered her for reintegration and exceeded its authority by appointing a substitute custodian because we must have jurisdiction over the appeal to reach these claims. We also recognize that dismissal of this appeal may appear to be a harsh or unfair result because it leaves Mother without an appealable remedy. But this is a problem only the Legislature can address.

Appeal dismissed.